TERRE HAUTE ELECTRIC RAILWAY COMPANY v. YANT.

[No. 2,570.   Filed Nov. 2, 1898.   Rehearing denied Jan. 26, 1899.]

STREET RAILWAYS.—*Negligence.*—*Injury to Driver of Vehicle.*—Where a horse that is being driven along a public highway over which a line of street railway is operated takes fright at an approaching car, and because the car is not stopped, becomes unmanageable and injures the driver, the railway company will not be liable in an action for negligence, unless the car is being run in an unusual, unnecessary, and improper manner.

From the Vigo Circuit Court.   *Reversed.*

*J. G. McNutt* and *F. A. McNutt*, for appellant.

*J. O. Piety* and *S. R. Hamill*, for appellee.

COMSTOCK, J.—Appellee, who was plaintiff below, sued the Terre Haute Electric Railway Company to recover damages for a personal injury alleged to have been caused by the negligence of the appellant company. The complaint was in two paragraphs; the first charging negligence, the second wilful injury. The second paragraph was withdrawn. A demurrer for want of facts to the first paragraph was overruled, the cause put at issue by general denial, and verdict returned in favor of appellee for $905. A motion for a new trial on the grounds that the verdict was contrary to law, was not sustained by sufficient evidence, that the damages were excessive, and for alleged errors of the court in admitting and refusing to admit evidence, and in giving and refusing to give instructions, was overruled, and judgment rendered on the verdict. The first and second errors assigned question the sufficiency of the complaint; the third, the action of the court in overruling appellant's motion for a new trial.

The complaint charges that on the day of the alleged injury, defendant owned and operated a street railway line with double tracks running along a public street in the city of Terre Haute, and along the center of the National road east of said city; that on said day, while plaintiff and his wife were traveling in a one-horse buggy along said highway, and on the south side thereof, and going east, they met one of the defendant's electric street cars going west; that "the said horse saw and heard the said car traveling as aforesaid, and said horse did then and there become frightened at said fast-going car, and noise caused thereby, and began to plunge and start, and was be-

coming unmanageable; that thereupon this plaintiff jumped out of his said buggy, and took hold of the harness and bridle on and about the said horse's head, so that he would be more able to manage and control said horse, all of which was in plain view of defendant and defendant's agents who were controlling, operating, and running said car, and said servant ought to have seen, and did see, some time before the said car had come near said horse, the imperiled condition and position of the plaintiff caused by the fast-going car as aforesaid; that, notwithstanding, the plaintiff's dangerous and imperiled position and condition, caused as aforesaid, the defendant by its agent, wrongfully, carelessly, and negligently ran said car at a high rate of speed as aforesaid, towards, on, near to, and within but a few feet of this plaintiff and the said horse, which caused said horse to become entirely unmanageable, and to start, plunge, turn and to run, throwing this plaintiff down, and causing said horse to run over and trample on said plaintiff." It is not claimed by appellee's learned counsel that appellant was at fault in running its car and making the noise necessarily incident thereto, nor that it was run upon the occasion in question in an improper manner up to the point where it was alleged the horse was becoming unmanageable; but that, when the motorman saw that appellee's horse was frightened and becoming unmanageable, he should have stopped the car.

Booth on Street Railway Law, in section 298, states the law in the following language: "And,    *    *    * for obvious reasons, companies which have been duly licensed, and, therefore, have as much right to run their cars in the streets as others have to drive through them with their horses and vehicles, cannot ordinarily be held responsible for horses taking fright at the appearance, movement or noise of the cars. If a

horse takes fright at an approaching car, and, be-
cause the car is not stopped, * * * becomes
unmanageable and runs away, injuring the driver or
others, the company is not liable, unless the con-
duct complained of, in the management of the car,
is attributable only to a wanton or malicious disre-
gard for the safety of the driver or other travelers
upon the street. * * * To the extent that travelers,
whether in cars, on foot or in private vehicles, have
the right to proceed without unnecessary interrup-
tion or delay, the rights of all are equal, and the law
makes no distinction between the vehicles used or the
means employed. No other rule would be reasonable
or practicable; for if drivers, motormen, or gripmen
were required to stop their cars, slacken their speed,
or omit or discontinue necessary signals, upon which
the safety of others depends, because timid horses may
become frightened, or already manifest symptoms of
fear, not indicating imminent peril, street railway
service would be so materially embarrassed by nu-
merous delays as to defeat the purpose for which such
franchises are granted, and the dangers to the general
public, for whose protection warnings are given,
would be greatly enhanced." Citing the following
among other cases: *Chapman* v. *Zanesville St. R. Co.*,
27 W. L. B. 70; *Coughtry* v. *Willamette St. R. Co.*, 21
Ore. 245, 27 Pac. 1031; *Cornell* v. *Detroit, etc., R.
Co.*, 82 Mich. 495.

In *Doster* v. *Charlotte St. R. Co.*, 117 N. C. 651, 23 S.
E. 449, the Supreme Court of North Carolina said:
"Where a horse is being driven or is running uncon-
trolled along a highway parallel to a railway of any
kind, though it give unmistakable evidence by its
movements that it is alarmed at an approaching train
or car, the engineer or motorman in charge is not
negligent in failing to diminish the speed, unless the

animal is actually on the track, in his front, or he has reasonable ground to believe that in its excited state it is about to go or may go upon it, so as to cause a collision." In *Steiner* v. *Philadelphia Tr. Co.*, 134 Pa. St., 199, which was an action to recover for injuries received occasioned by the running away of a team of horses standing by the street railway track growing out of the continuous ringing of the bell, the court said: "If the gripman saw that plaintiff's horses were restive, it does not follow that he had any reason to apprehend the accident that occurred. The plaintiff, according to his own testimony was at their heads and might naturally be supposed to be able to control them."

The pertinency of these extracts from the text-book and reports justify, we think, the foregoing lengthy quotations. The complaint, judged by the law as set out in the foregoing authorities, is fatally defective. It does not appear from the averments that appellee would have been able, because of the gentleness of the horse or from any other reason, to have controlled it, and prevented the injury had the car been stopped before its near approach; nor that the motorman had any reason to apprehend the accident that occurred. Neither do they show that he manifested a wanton disregard for the safety of appellee; nor that he had reason to believe that appellee, who was in the position which he believed the best to manage his horse, would not be able to do so. The averments that the car was being run at a high rate of speed and making a great noise, and that it was run carelessly and negligently, are not averments of facts showing negligence. Many decisions might be cited from the reports of this and other states in which railway companies have been held liable for damages occasioned by frightening horses. Upon examination it will appear that the lia-

bility was held to attach on the ground of negligence when the fright has been caused by the running of the train or car in an unusual, unnecessary, or improper manner, or when those in charge, seeing the injured party in imminent peril, have acted in a manner attributable only to a wanton disregard for the safety of those in peril. To hold the complaint sufficient would be to declare it to be the duty of a motorman operating a car in a lawful manner to at once stop or slacken its speed at the sight of a frightened horse on the public highway adjacent to the track, although held by his owner in a manner from which it might fairly be supposed he would be able to control him. To so hold, we believe, would be error. The complaint in the *Lake Erie, etc., R. Co.* v. *Juday,* 19 Ind. App. 436, cited by appellee, in its averments charged that the servants of the railway company operating the hand car at which plaintiff's horse was frightened refused to check the car although signaled and requested to do so; this at the time plaintiff was in the buggy, with two other persons, when said agents saw that the horse was unmanageable. These facts alone were sufficient to show a wanton disregard for the safety of those in the buggy, amounting to negligence.

We do not deem it necessary to consider the other alleged errors discussed by counsel. Judgment reversed, with instructions to sustain the demurrer to the complaint.