MARION CITY RAILWAY COMPANY *v.* DUBOIS.

[No. 2,913.   Filed November 23, 1899.]

VERDICT.—*Special Findings.—Overthrow of General Verdict.*— It is not sufficient for the overthrow of the general verdict for the plaintiff that the facts specially found do not establish the plaintiff's alleged cause of action, but it must appear that such facts are irreconcilably inconsistent with the general verdict. *p. 343.*

STREET RAILROADS.—*Horse Frightened at Approach of Car.—Personal Injuries.*—A street railway company is not liable for an injury caused by the mere fright of a horse at an approaching car, where there is no reckless or wanton conduct indicating disregard of the safety of those using the street for passage, or malicious purpose to injure them. *pp. 346, 347.*

SAME.—*Horse Frightened at Approach of Car.—Special Finding.— Overthrow of General Verdict.*—In an action against a street railway company for damages for personal injuries to plaintiff's wife, the special findings showed that while plaintiff and his wife were driving across a covered bridge their horse took fright at a car coming around a curve from the opposite direction, and the action of the horse in its attempt to run away caused plaintiff's wife to fall from the buggy, injuring her; the jury found that it was not in evidence that the car was being run without due regard for the safety of persons traveling in private conveyances; that the motorman who had charge of the car applied the brake for stopping the car as soon as he could do so after he saw that the horse was showing signs of fright; that the car at the time of the accident was on an ascending grade and could have been easily stopped before it was stopped, and if it had been stopped at the foot of the grade, the accident would probably have been avoided. *Held,* that the facts found were irreconcilably inconsistent with a general verdict for plaintiff. *pp. 343-347.*

From the Grant Circuit Court.   *Reversed.*

*W. H. Carroll* and *G. D. Dean,* for appellant.
*W. J. Houck,* for appellee.

BLACK, J.—The appellee in his complaint against the appellant alleged the personal injury of his wife by her

being thrown from a buggy in which she was riding with the appellee, her fall being caused by the running away of the horse drawing the vehicle, through fright produced by the negligence of the appellant in causing the approach toward the animal of an electric car at a high rate of speed; and damages were sought for the appellee's loss of his wife's services and for expenses incurred by him because of her injury.

A jury returned a general verdict, awarding the appellee $250, and also returned answers to interrogatories submitted upon the request of the parties.

The motion of the appellant for judgment in its favor upon the answers to interrogatories, notwithstanding the general verdict, was overruled, and this ruling alone is presented for our consideration.

It is claimed on behalf of the appellant that many of the findings in answer to interrogatories relating to the question of negligence on the part of the appellant and that of contributory negligence on the part of the appellee and his wife were not findings of facts, but were conclusions of law, and therefore are not entitled to any consideration. If, however, such conclusions be eliminated, it remains true that the jury by the general verdict determined that the appellant was negligent, and that the appellee's wife was injured thereby, as alleged in the complaint, without contributory negligence on the part of the appellee or his wife. To decide that the court erred in overruling the appellants' motion for judgment, the special findings of the jury must show facts irreconcilably in conflict with the general verdict. It is claimed for the appellant that the special findings show that there was no negligence on the part of the appellant, and also, though less clearly, that there was contributory negligence.

The special findings show that the appellee with his wife and daughter, riding in a buggy drawn by one horse, passed eastward over a covered and enclosed bridge 232 feet long, used by the public generally as a public highway, across the

Mississinewa river.  From the east end of the bridge, in which the passageway was sixteen feet wide, a road extended into Gas City.  The appellant's railway, on which cars were run by electricity with overhead trolley, ran along the north side of the highway and through the bridge.  While the buggy was in the bridge, a car came around a curve in the electric road about 800 feet east of the bridge and was proceeding thence in a practically straight line westward toward the bridge.  The horse became frightened at the approach of this car, and the action of the horse through its fright and attempt to run away caused the fall of the appellee's wife to the ground at a point on the road about sixteen feet east of the bridge.  The jury found that the point at which the injury occurred was more than ordinarily dangerous for the passing of a conveyance by a car; that the car at the time of the accident was on an ascending grade, the ascent commencing at a point from 100 to 125 feet east of the bridge, which would have rendered it easy for those in charge of the car to have stopped it before it did stop; that if it had been stopped at or near the foot of the grade, it was more than likely the accident would have been avoided.  The jury found that it was not in evidence that the car was being run at the time of the accident without due regard for the safety of persons traveling in private conveyances; that vehicles were passing over the bridge in plain view of those operating the car approaching the bridge, through almost all the distance of 800 feet from the turn in the road to the bridge; that the roadway through the bridge and south of the railway tracks was eight and one-fourth feet wide; that the driveway in the eastern approach to the bridge was at the east end of the bridge eight and one-half feet wide and gradually widened toward the east.

The appellee first saw the car when he was in the west end of the bridge and the car was at or near the curve 800 feet east of the east end of the bridge.  It was not possible for the appellee to turn within the bridge and retrace.  The

jury found that, under all the circumstances at the time and place of the accident, there was nothing that the appellee could or should have done, other than what he did, to avoid the accident and prevent injury to himself, his property, and the persons under his charge. The appellee was acquainted with the bridge and the east approach thereto, as to their width, and knew that the railway track was laid over the bridge and approach, and that cars were and had been operated thereon. The appellee had never driven the horse over the bridge, and had not known it to have been driven over it when a car was approaching, and the horse had never met a car in the bridge. The three persons were riding in a buggy intended to carry two adult persons only, the buggy having a very low back projecting but one inch or one inch and a half above the cushion, it being difficult for a person on the outside to retain a place thereon while three adult persons were riding in the buggy. The horse was a quiet, gentle, and tractable horse, accustomed to seeing and passing moving street-cars propelled by electricity without becoming frightened thereat. The car was stopped about eighty-four feet east of the place where the appellee's wife was first on the ground, which was about sixteen feet east of the bridge. The electric power which propelled the car was shut off, so as not to propel it, 570 feet east of the bridge. The motorman who had charge of the car applied the brake for stopping the car as soon as he could do so after he saw that the horse was showing signs of fright. The car was running at the speed of about twelve miles per hour, from the time it left the curve till it stopped at a point about 100 or ninety feet east of the bridge. The horse was frightened because of the close proximity to which it was brought to the car by reason of the narrowness of the eastern approach and the roadway thereon. When the horse manifested the first signs of fright, the appellee struck it with a whip, thereby increasing its speed.

We are of the opinion that the facts specially found did

not constitute contributory negligence, as a matter of law, but the jury, notwithstanding such facts specially found, might consistently find, as was found by the general verdict, that there was no negligence of the occupants of the buggy proximately contributing to the injury.

But it is more difficult to find the necessary consistency between the special findings in answers to interrogatories and the conclusion involved in the general verdict that the appellant was chargeable with negligence which was the cause of the injury.

It is not sufficient for the overthrow of the general verdict to decide that the facts specially found did not establish negligence, but for such result it must be decided that the special facts establish the conclusion, as a matter of law, that the appellant did not by the negligence of its servants cause the injury; that is, that the facts specially found are irreconcilably inconsistent with the general verdict.

The electric railway company had a right to run its cars upon its railway track without unnecessary interruption or such delays as would be incompatible with the carrying on of its legitimate business of transporting passengers. The appellee had a like right to the use of the public highway by traveling thereon in his vehicle drawn by a horse. A rule prescribing the care which the street railway company should exercise for the safety of travelers in vehicles must be reasonable and practicable, having in view the purpose to be subserved and the means of accomplishing it. The company can not be held responsible for injury caused by the mere taking fright of horses at the appearance of the car approaching on the same street and being operated in the ordinary manner, though it be approaching rapidly, where there is no reckless or wanton conduct indicating disregard of the safety of those so using the street for passage or malicious purpose to injure them. No rights should be held to belong to such a company in this respect except such as legitimately belong to the full enjoyment of the franchise; but the rights of

others in the use of the highway must be enjoyed with such regard for the right to the concurrent use by the railway company as will not practically and unreasonably interfere with the rapid transit for which electric railways are intended and adapted. *Terre Haute, etc., R. Co.* v. *Yant*, 21 Ind. App. 486.

In the case at bar, it appears by the special findings that the electric motive power had been turned off at a considerable distance from the bridge and the appellee, whether because of a descent in the railway or because of the fright of the horse does not appear. But it does appear that as soon as those operating the car saw the horse's fright an effort was made to stop the car; that the brake was applied, and the car was stopped eighty-four feet from the place where the appellee's wife fell from the buggy, and about ninety or 100 feet from the bridge, where the car was upon an ascending grade.

It affirmatively appears that there was no wanton or reckless conduct on the part of the appellant's servants, but, on the contrary, there was an effort to prevent the injury. There was no contact of the car with the horse or buggy or those riding in the buggy. The horse did not run down the embankment and thereby injure the appellee's wife, but she fell out upon the road, at a considerable distance from the car.

It would seem almost a declaration against the right of the public to be transported by means of electric railways to hold the appellant responsible for the unfortunate accident which befell the appellee's wife.

The judgment is reversed, with instruction to sustain the appellant's motion for judgment in its favor.