# Richmond.

## Danville Railway and Electric Co. v. Hodnett.

### March 12, 1903.

1. Street Railways—*Frightened Horses—Negligence—Question for Jury.*
Street car companies are not required to stop their cars upon discovery of the fright of a horse on the street from the usual and ordinary noises of the car, but should keep the car under control so as to avoid damage when occasion requires. They cannot wantonly, maliciously, recklessly or negligently inflict injury upon a traveller on the street by running their cars upon him when their servants in charge of the cars know, or by the exercise of reasonable care and caution ought to know, of the traveller's inability to prevent a collision. Whether, in a given case, the company has been guilty of wanton, malicious, reckless, or negligent conduct is a question for the jury under proper instructions from the court.

2. Negligence—*What Constitutes—Question for Jury.*—Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or, the doing what such a person would not have done under existing circumstances. The duty is dictated and measured by the exigencies of the occasion. Whether there has been negligence in a given case is a question for the jury, under proper instructions from the court.

3. Street Railways—*Persons on Track—Care—Collision.*—When those in charge of an electric street car know, or by the exercise of reasonable care ought to know, that a person on the track, or about to get on the track in front of the car, is in such a situation or condition that he is unable to avoid a collision with the car if it continues its course, it is their duty not only to have the car under control, but, if need be, to stop it in order to prevent injury to the person so situated.

4. Street Railways—*Frightened Horses—Negligence—Collision—Proximate Cause.*—Where a horse ridden on a street has become frightened by the noise of an approaching street car, and has manifestly gotten beyond the control of the rider, it is the duty of those in

charge of the car to use reasonable care, and, if need be, stop the car, in order to avoid a collision. If, in consequence of a failure to use such care, the horse is struck by the car, and runs off and throws the rider, causing him injury, the car company is liable. It is not necessary that the rider should have been struck by the car, or that he should have been knocked from the horse at the point of collision in order to entitle him to recover. The negligent striking of the horse is the proximate, or efficient cause of the injury.

Error to a judgment of the Corporation Court of the city of Danville, rendered January 25, 1902, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Berkeley & Harrison,* for the plaintiff in error.

*Peatross & Harris,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

R. T. Hodnett sued the Danville Railway and Electric Company in the Corporation Court of the city of Danville and recovered a judgment for damages to the amount of $3,000 for injuries alleged to have been sustained by him under the following circumstances:

On January 19, 1901, Hodnett, along with a neighbor of his, W. C. Witcher, rode on horseback into Danville, passing a car of the defendant company standing at the terminus of its line on north Main street, Hodnett riding next to the railway track and Witcher to his right; the space between the track and the street curbing being about fourteen feet wide. After Hodnett and Witcher had gotten a short distance past the car mentioned, it started on its return along Main street, and when it approached Hodnett's horse, the horse began to show fright by shying, prancing, and endeavoring to run, Hodnett in the

meantime endeavoring to hold, manage and quiet it, and to keep it away from the railway track; all of this being in full view of the motorman operating the car at a distance from the horse, at no time after he became frightened and unmanageable, greater than thirty yards. As the car approached nearer the horse, he became more frightened, unmanageable, and beyond the control of Hodnett, shyed to within a few feet of the car, then went forward and came back upon the track, according to plaintiff's witnesses, twenty-five or thirty yards in front of the car; and, according to the witnesses of the defendant company, only about eight feet. The car was running at a speed of at least six miles an hour, and ran upon and against the horse, causing him to lunge and bound forward, whereby Hodnett became unseated, and fell upon the curbing of the street on the opposite side of the railway track, about 150 feet from where the collision of the car with the horse occurred, receiving the serious bodily injuries of which he complained.

We are asked to review and reverse this judgment, first, because of alleged error in the giving and refusal of certain instructions; and second, because the verdict is contrary to the law and the evidence.

The court, at the instance of the defendant in error here, plaintiff in court below, gave to the jury the following instructions:

"The court instructs the jury that if they believe from the evidence in this cause that the horse of the plaintiff, while being ridden by him along north Main street, in the city of Danville, along and over which the cars of the defendant company were propelled and operated by electric power, became frightened by one of the cars of the defendant company approaching from the rear; that as the result of such fright the horse of the plaintiff became unmanageable and passed from under the control of the said plaintiff despite his best efforts to manage and control it, and carried the plaintiff upon the part of said street

over and along which the track of the defendant company extended, and in front of one of the moving cars of said defendant, and that the servants of the defendant company in charge of said car saw, or by the exercise of ordinary care could have seen, the position and situation of the plaintiff in time to have ·stopped the movement of its car, but failed to do so, and ran said car in and upon the horse upon which the plaintiff was riding, thereby causing said plaintiff to be thrown from said horse and to receive injury, or injuries complained of. in this action; that then they must find for the plaintiff, and fix his damages at such a sum as to them may seem just under all the. evidence in the cause, not exceeding the sum of $10,000 claimed in the declaration; unless they further believe from the evidence in the case that notwithstanding such failure upon the part of the defendant company to stop said car, the. plaintiff could, by the exercise of ordinary care on his part, have avoided the injury to himself, and failed to do so."

It is contended that this instruction lays down, as a general rule of law, that street cars are required to come to a stop when the servants of the company operating a car see a vehicle or. horse upon the track ahead of the car, and the horse shows fright at the approach or noise of the car.

We do not think that the instruction admits of this interpretation. Nor is it necessary to decide in this case whether or not street-car companies have a right on the space occupied by their tracks superior to the right of other travellers on the street between crossings. They are not required to stop their cars upon the discovery of the fright of a horse on the street occasioned by the usual and ordinary noises of the car, and are only required to keep the car under control so that it can prevent damage when occasion arises; and while it is a recognized fact that travellers should give the right of way to a street car, it does not relieve the company from exercising due care to prevent a collision. They cannot wantonly, maliciously, recklessly, ·

or negligently inflict injury upon a traveller on the street by running their car upon him when the servants of the company in charge of the car knew, or, by the exercise of reasonable care and caution, should have known, of his inability to prevent a collision with the car. Booth on Street Railways, sec. 305; Joyce on Elec. Law, sec. 597.

Whether the company in such a case has been guilty of wanton, malicious, reckless or negligent conduct is a question for the jury, under proper instructions from the court.

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or the doing what such a person under existing circumstances would not have done. The duty is dictated and measured by the exigencies of the occasion." *Balt. & Po. R. Co.* v. *Jones*, 95 U. S. 439, 24 L. Ed. 506.

In *Welsh* v. *The Jackson County Horse R. Co.*, 81 Mo. 466, a child on the street was run over by a horse car and killed, and the appellate court approved an instruction to the jury which told them that "if, by the exercise of ordinary care and prudence, the driver might have seen the child and stopped the car in time to have avoided the killing; or if, by the exercise of ordinary care and prudence, under the circumstances, the driver might have avoided driving over the child, plaintiff must recover."

Unquestionably greater caution and prudence is required of a street-car company to avoid an injury to a small child on the street than to an adult, for the reason that the servants of the company operating the car may reasonably presume that a person of sufficient size and age, apparently in the possession of all his powers and faculties, will get out of the way of the approaching car, but, when those in charge of the car know, or, by the exercise of reasonable care and prudence, should know, that a person on the track or about to get on the track in front of the car is in such a situation or condition that he is unable to

avoid a collision with the car if it continues its course, then, both upon reason and authority, it becomes the duty of those operating the car not only to have the car under control, but, if need be, to stop it in order to prevent injury to the person so situated.

In *Cooke* v. *Balt. Trac. Co.*, 80 Md. 554, 31 Atl. 328, it is said: "Negligence is essentially relative and comparative, and not absolute. It is not even an object of simple apprehension apart from the circumstances out of which it grows. As these circumstances necessarily vary in their relations to each other, under different surroundings they inevitably change their original signification and import. Hence it is intrinsically true that those things which would not under one condition constitute negligence, would, on the other hand, under a different, though not necessarily an opposite condition, most unequivocally indicate its exercise. Thus an act which would have been neutral or indifferent when street cars were drawn by horses at a comparatively low rate of speed, and could consequently be readily brought to a stop as occasion required, would become culpable negligence since the change of motive power, and the great acceleration of speed incident thereto under the rapid transit system. The existence of negligence is, therefore, to be sought for in the facts and surroundings of each particular case. But there will generally be found standing prominently out in many instances of this character a disregard of the safety of others, a want of caution to avoid injury where the duty to use that caution is incumbent, and a reckless or heedless use of dangerous agencies in localities where the peril from their use is obvious. When these conditions, or any of them, are presented, and an injury is inflicted in consequence upon another, a case of actionable negligence has been made out, provided the plaintiff is himself free from contributing blame."

In that case the injury was to an occupant of a buggy entering upon a street into which a cable car swung at full speed and

without headlight around a curve from an intersecting street, and collided with the buggy. Discussing the negligence of the defendant company, and characterizing it as "gross and flagrant," the opinion proceeds:

"The gripman had ample time to check the speed of his car; and if he saw that the plaintiff was driving to a place of peril he was bound to stop and avoid a collision otherwise inevitable. If he did not see the plaintiff he was equally negligent in not stopping before sweeping around the curve, because a proper regard for the safety of persons who might be rightfully on the east side of Gilmore street above Fayette, and who would therefore be beyond the reach of his vision by reason of the intervening buildings along the north side of Fayette street, imperatively required him to stop before venturing around the curve, and to ascertain that the track beyond or north of the corner was clear."

There, as will be readily observed, the court not only held that it was the duty of the gripman to have his car under control, but upon seeing the plaintiff drive to a place of peril to stop the car in order to prevent it from coming in contact with plaintiff's buggy.

Joyce on Elec. Law, sec. 597, discussing the duties of a motorman in charge of a street car, when he discovers that a horse is being frightened by the approach of the car, says: "While a motorman need not necessarily stop his car upon the first indication of a horse being frightened by the approach of his car, it would seem that such fact would be construed as sufficient notice to him to exercise reasonable care; that is, to act as a reasonably prudent man would under the same circumstances, and therefore, if his car is advancing at a high rate of speed, to slacken its speed, or, if being run only at a moderate rate, to have it under control so that he may readily stop it if the latter act appear necessary from the subsequent action of the horse. This duty he owes not merely to the person or per-

sons in a vehicle, but also to the travelling public, who may suffer injury in case the horse becomes unmanageable. He should not wait until the horse is beyond the driver's control, for then any action on his part would probably avail little, but he should be required to act at the point of time in the occurrences when a reasonably prudent man might infer that the horse would become unmanageable, and would act."

The learned counsel for plaintiff in error in the case at bar cite, among others, as supporting the objection urged to the instruction under consideration, the case of *Marion City Rwy. Co.* v. *Buboise* (Ind. App.), 55 N. E. 266, and *Doster* v. *Charlotte St. Ry. Co.* (N. C.), 23 S. E. 449, 34 L. R. A. 481.

In the first-named case the action was for injuries to the plaintiff's wife, resulting from being thrown out of a buggy by reason of the fright of the horse drawing the buggy at the approach of the car from behind just as the buggy entered upon a covered bridge, and the Appellate Court of Indiana held the defendant company not liable; the decision being put upon the ground that the servants of the defendant company discharged every duty imposed upon them by the circumstances attending the accident to the plaintiff's wife, but the fact that the car was brought to a stop before coming in contact with the buggy is emphasized. The opinion says: "It appears by the special findings that the motive power had been turned off at a considerable distance from the bridge and the appellee. Whether the motive power had been turned off because of a descent in the railway, or because of the fright of the horse, does not appear. But it does appear that as soon as those operating the car saw the horse's fright an effort was made to stop the car; that the brake was applied, and the car was stopped 84 feet from the place where the appellee's wife fell from the buggy, and about 90 or 100 feet from the bridge, where the car was upon the ascending grade. It affirmatively appears that there was no wanton or reckless conduct on the part of the appellant's ser-

vant, but, on the contrary, there was an effort to prevent the injury. There was no contact of the car with the horse or buggy. The horse did not run down the embankment and thereupon injure appellee's wife, but she fell out upon the road at a considerable distance from the car."

In *Doster* v. *Charlotte St. Ry. Co., supra,* the decision is that "an electric street railway company is not liable, in the absence of a collision with its car, on account of its failure to stop its car, for injuries caused by a horse driven on the street becoming frightened, no unnecessary noise having been made for the purpose of frightening the animal"; but there is nothing in the opinion opposing the doctrine that where the traveller on the street is imperilled by his horse being frightened by an approaching car, and his imperilled condition known, or, by the exercise of ordinary care, could have been known, to the motorman in charge of the car in time to have stopped it before coming in contact with the traveller or his horse, it is negligence not to stop the car, and if injury result therefrom the injured person may recover of the street-car company damages for the injury, provided he is himself free from contributory blame. On the contrary, the opinion plainly sanctions that doctrine.

Instruction No. 1, given for the defendant in error, is based upon the evidence as to the situation in which the parties were at the moment of the accident, and correctly expounds the law applicable to the facts which the evidence tends to prove.

The refusal to give instruction No. 5, asked by plaintiff in error, constitutes its next assignment of error.

By the four instructions already given for plaintiff in error its side of the case was as fully and fairly submitted to the jury as it could, upon the evidence, reasonably have asked. Instruction No. 5 proceeds upon the theory that because defendant in error was not knocked off the horse by the contact of the car with it, but fell or was thrown from the horse by the fright

which it had before and after it was struck by the car, the plaintiff in error was not liable for the injuries resulting. In other words, the proposition contained in the instruction is that to entitle him to recover, defendant in error had to be struck by the car, and the injuries to him inflicted by actual collision with the car, or by being knocked off his horse at the point of the collision.

Clearly, if the injuries he sustained were caused by the negligence of plaintiff in error's servants running the car against his horse, he was as much entitled to recover for the injuries sustained in the manner and at the point they were as if they had been inflicted at the point of the collision.

"The proximate cause is the efficient cause; the one that necessarily sets the other causes in operation." *Ins. Co.* v. *Boone,* 95 U. S. 117, 24 L. Ed. 395. Manifestly, therefore, it was not error to refuse an instruction which was calculated, as was instruction No. 5, to lead the jury to the conclusion that because defendant in error was not actually struck or knocked off his horse by the car as the result of the collision, he could not recover for the injuries he sustained.

What we have already said as to instruction No. 5 applies as well to instruction No. 6. This instruction was well calculated to mislead the jury to the conclusion that because the horse of defendant in error was not knocked down, nor he knocked off his horse, by the car, but fell or was thrown from the saddle by his inability to keep his seat, or by the horse coming in collision with a tree after the car had stopped, plaintiff in error was not liable for the injuries resulting. The instruction was rightly refused.

The statement of the case already made renders it unnecessary, we think, to review the evidence in detail in considering the remaining assignment of error, which is to the refusal of the court below to set aside the verdict and grant a new trial. Plaintiff in error lays much stress upon the evidence as to the

control which the motorman had over the car, and where the car stopped after the collision with the horse. Upon these questions the evidence is conflicting, but if it be conceded that the car stopped within its length, 30 feet, after the collision, still the question was whether or not it was negligence, under all the circumstances proven, not to stop the car before striking the horse, and whether that negligence was the proximate cause of the injuries to defendant. and these were questions for the jury. There was no attempt to prove contributory negligence on the part of defendant in error, and if, as plaintiff in error contends, the motorman had his car under such control as to enable him to stop it immediately, it was all the more reckless in him not to bring the car to a stop, when he saw the situation which the evidence shows defendant in error to have been in when the car was run against his horse, and that a collision with the horse could only be avoided by bringing the car to a stop.

According to the motorman's own statement upon cross-examination as a witness for plaintiff in error, he saw that the horse was beyond the control of its rider; that it could not be kept off the track, or gotten to go forward out of the way of the car, and that the car could have been easily stopped before striking the horse.

We are of opinion that the evidence fully sustained the verdict of the jury, and the judgment of the Corporation Court must be affirmed.

*Affirmed.*