## EVANSVILLE ELECTRIC RAILWAY *v.* FOLZ.

[No. 7,065.   Filed January 31, 1911.]

1. RAILROADS.—*Street.—Highway Crossings.—Frightening Teams.—Complaint.*—A complaint alleging that the plaintiff and her son, twenty-four years old, were driving a team of mules along the public highway at a point where defendant street railroad company's track intersects it, that defendant's motorman in charge of a car was approaching, that the mules became frightened and plunged and reared, that plaintiff signaled and called to the motorman, but the motorman, "seeing the perilous condition" of the plaintiff when his car was 200 feet away, refused to check his car, that he negligently ran the car up to the team, causing the plaintiff to be thrown from her vehicle into such a position that she was struck by the car, sustaining permanent injuries, fails to state a cause of action.  pp. 59, 63.

2. HIGHWAYS.—*Use of.—Travelers. — Street Railroads.* — Street railroad companies, where properly authorized, and travelers have equal rights in the use of streets and highways.  p. 61.

3. RAILROADS.—*Street.—Use of Highways.—Injury to Travelers,—Complaint.*—A complaint for injuries to a traveler upon a highway, caused by a street railroad company's operation of its car should allege (1) that the person injured was in a position of peril likely to be increased by the closer approach of the car, (2) that the motorman saw such danger, or should have seen it, in time to avoid the injury, (3) that the motorman negligently failed to stop, and (4) that by reason thereof the plaintiff was injured.  p. 62.

4. PLEADING.—*Use of Participles.—Recitals.*—The use of participles in a pleading should be avoided, since they constitute recitals and not averments.  p. 63.

5. RAILROADS.—*Street.—Travelers.—Peril.—Complaint. — Recitals.*—A statement in a complaint that the plaintiff, realizing the danger, signaled and called to the motorman of defendant's street-car, is not an averment that plaintiff was in a perilous position, the facts constituting the danger being necessary.  p. 64.

From Posey Circuit Court; *O. M. Welborn,* Judge.

Action by Catherine Folz against the Evansville Electric Railway Company. From a judgment on a verdict for plaintiff, for $1,500, defendant appeals. *Reversed.*

*W. D. Robinson, W. E. Stilwell* and *G. V. Menzies,* for appellant.

*William Reister* and *Walter S. Jackson,* for appellee.

LAIRY, J.—This is an appeal from a judgment awarding damages to appellee for personal injuries. The complaint on which the judgment is based, omitting the formal parts, is as follows: "Plaintiff complains of defendant, and alleges that defendant was, at the time hereinafter mentioned, a corporation duly organized under the laws of the State of Indiana, and owned and operated a system of lines of street railway, over and upon certain streets in the city of Evansville, Indiana, and extending and operating said lines to suburban points near the city; that on August 30, 1902, defendant was the owner of, and operated a street railway upon a street or road known as the Mount Vernon road; that on said day plaintiff, in company with her son, a man twenty-four years of age, driving a team of mules hitched to and drawing an ordinary spring wagon, was traveling upon said road, a public highway and thoroughfare, going in a northwesterly direction, at and near the point on said road where Law avenue crosses and intersects the same; that, while so driving at said time and place, defendants were running a street-car, propelled by electricity, in charge of a motorman, in a southwesterly direction, approaching said place on said Mount Vernon road; that, while so running said car, plaintiff's horses became frightened at the approach and noise of defendant's car, as alleged; that said horses became more and more frightened and unmanageable as said car approached, and plaintiff and her son, realizing the danger, signaled to the motorman in charge of said approaching car, calling said

motorman's attention to their perilous condition when said approaching car was still a distance of about two hundred feet from the point on said road where this plaintiff and her son were, as alleged, but said motorman, without decreasing the speed at which said car was still running, or without stopping said car, and seeing the perilous condition of, and the circumstances surrounding, said plaintiff, when said car was still a distance of about two hundred feet from said point, as before alleged, and disregarding plaintiff's signaling, warning and calling, and disregarding the perilous condition of, and the circumstances surrounding, said plaintiff, as alleged, all of which the motorman did see, or could have seen by the exercise of ordinary care, said motorman carelessly and negligently approached, causing said mules to turn from side to side, and to lunge and back, all of which frightening and unmanageableness of said team of mules increased as said car approached them, then in the hands and in charge of said motorman, as alleged; that a sudden jerking, turning and lunging to the side, all of which was caused by the approach of said car, in the manner and under the circumstances, as before alleged, and in the hands of said motorman of said car, caused said plaintiff to fall out of said wagon upon the ground near said track of said street railway just as said car was passing said wagon and team; that said plaintiff falling against said passing car, her clothing becoming then and there fastened in the trucks of said car, dragging said plaintiff on the ground several feet along the side of said track; that said frightening of the mules, as alleged, and said lunging and jerking, and said falling of the plaintiff, as before alleged, all being caused by said motorman's continuing in the approach of said car in the careless and negligent manner as before alleged, after seeing the perilous situation of this plaintiff, and hearing the signal of said plaintiff and her son, as alleged; that if said motorman, under the circumstances and conditions, as alleged, after seeing the perilous situa-

tion of said plaintiff, had stopped the car, the mules could have been controlled, and plaintiff would not have fallen out of said wagon and would not have been dragged by the moving car, as before alleged, and would not have received the injury complained of herein; that, by reason of the failure on the part of said motorman then and there to stop said car, plaintiff was injured, as before alleged. Plaintiff avers that said falling and dragging injuring her right side and both her lower extremities, so that it became necessary to call medical aid; that by reason of such injury she was confined to her bed and room for more than two months, and is still unable to use her right leg, it being injured at and above the knee joint, so that said joint is stiff and interferes with plaintiff's walking, and still causes her pain when she undertakes to use it; that she has been lamed by reason of defendant's negligence, her earning capacity decreased, and is now unable to follow her usual vocation in life; that she has suffered great bodily pain and is now suffering, has paid medical bills, by reason of defendant's negligence, and without any fault or negligence on her part and without fault or negligence on the part of her son. Wherefore plaintiff demands judgment in the sum of $5,000, and all other proper relief.''

A demurrer to this complaint for want of facts sufficient to constitute a cause of action was overruled by the court. This ruling is assigned as error, and thereby the sufficiency of the complaint is presented to this court for determination.

The question is, Does this complaint state facts sufficient to constitute a cause of action? The law defining the relative rights and duties of companies operating electric street-cars in the streets and highways, and of persons riding or driving horses along such highways or streets, is fairly well settled in this State. This court, in the case of *Terre Haute Electric R. Co.* v. *Yant* (1899), 21 Ind. App. 486, 69 Am. St. 376, quotes, with ap-

proval, the following from Booth, Street Railway Law §298: "And, for obvious reasons, companies which have been duly licensed, and, therefore, have as much right to run their cars in the streets as others have to drive through them with their horses and vehicles, cannot ordinarily be held responsible for horses' taking fright at the appearance, movement or noise of the cars. If a horse takes fright at an approaching car, and, because the car is not stopped, * * * becomes unmanageable and runs away, injuring the driver or others, the company is not liable, unless the conduct complained of, in the management of the car, is attributable only to a wanton or malicious disregard for the safety of the driver or other travelers upon the street. * * * To the extent that travelers, whether in cars, on foot or in private vehicles, have the right to proceed without unnecessary interruption or delay, the rights of all are equal, and the law makes no distinction between the vehicles used or the means employed. No other rule would be reasonable or practicable; for if drivers, motormen, and gripmen were required to stop their cars, slacken their speed, or omit or discontinue necessary signals, upon which the safety of others depends, because their timid horses may become frightened, or already manifest symptoms of fear, not indicating imminent peril, street railway service would be so materially embarrassed by numerous delays as to defeat the purpose for which such franchises are granted, and the dangers to the general public, for whose protection warnings are given, would be greatly enhanced."

In all such cases it is necessary to aver facts which show a duty on the part of those in charge of the car either to stop the car, or slacken its speed, or to use some other precaution. In order to show such duty, facts must be averred which show, (1) that the person injured was so situated in reference to the conditions surrounding him as would lead a person of reasonable prudence to believe that he was in a position of danger or peril,

and that the further approach of the car would be likely to increase such danger, and (2) that the person in charge of the car saw the conditions of danger surrounding the person injured, or that by the exercise of ordinary care, he could have seen such conditions in time to take precautions to avoid the injury. If this duty is shown by facts properly averred, and if it be further averred that the person in charge of the car failed to exercise the precautions which this duty imposed upon him, and that by reason of such failure the injury complained of resulted, to the damage of the plaintiff, the complaint states a cause of action.

The complaint in this case is unusually wanting in direct averments, many of the facts being recited by means of participial phrases. Participles do not contain the asserting element of a verb, and cannot properly be used in making a direct averment; but, waiving this defect and treating the facts so recited as direct averments, can it be said that this complaint states facts sufficient to show that it was the duty of the person in charge of the car to take any unusual precaution for the safety of the plaintiff? Upon this subject, the complaint avers that plaintiff's mules became frightened at the approach and noise of the car, and that they became more and more frightened and unmanageable as the car approached, and that plaintiff and her son signaled and called to the motorman. These averments, standing alone, are not sufficient to give rise to any duty on the part of the motorman, either to stop the car or reduce the speed. The complaint avers that the son, twenty-four years of age, was driving the team. There is no averment as to the width of the road at that place, showing it to be unusually narrow, or that there was an embankment, ditch or other dangerous condition in close proximity to plaintiff which could prevent her son from controling the team, or which would result in injury in case it was not immediately controled;

neither is it averred that the team and wagon were so close to the tracks of the street railroad company that, in their frightened condition, there was danger that the mules would go upon the tracks.

It is also stated in the complaint, by way of recital, that plaintiff and her son, realizing the danger, signaled and called to the motorman, calling his attention to their perilous position. This is not an averment that plaintiff and her son were in a perilous position, but, treating it as a direct averment, it states a conclusion and not an issuable fact. The facts surrounding the plaintiff, showing her situation to be dangerous or perilous, should have been averred. From what has been said we conclude· that the complaint was insufficient to withstand a demurrer.

The other questions presented on this appeal may not arise upon another trial of the case, and are therefore not considered.

Judgment reversed, with directions to sustain the demurrer to the complaint.