a passenger from a train by a servant authorized to perform that duty under certain circumstances, more force ·is used than necessary or proper. Mott v. Consumers' Ice Co., 73 N. Y., at page 547. If a servant, acting in a matter entirely foreign to his employment, commits an act contrary and in conflict with the same to carry out some purpose of his own, and thereby injures another, the master is not responsible, because under these circumstances the relation of master and servant *ceases to exist* in so far as it holds the master for the· act.

In the case of Kaiser v. McLean, 20 App. Div. 326, 46 N. Y. Supp. 1038, the defendant, a contractor, employed one Hanafin as a lamplighter. On the day in question, after lighting his lamps, he drove some boys from the structure in the course of construction, and one of those boys, the plaintiff's intestate, was driven by him across a railroad track, where he was killed by a passing train. The learned Appellate Division of the First Department, in its opinion, used the following language:

"It is difficult to see upon what theory the defendant can be held liable for the act of Hanafin, even if it was wrongful. There was no evidence that he was employed or authorized by his employer to commit any assault upon anybody in keeping his lamps lighted and the boys away from them. In order to hold a principal for the act of his servant, it must be shown that the act of the servant comes within the scope of his employment; and the master is not answerable for the willful wrong of the servant, or for any force or violence used by him, unless he was authorized so to do, except perhaps, in the case of a common carrier. In the case at bar there does not seem to be any proof whatever that Hanafin was authorized to do anything more than to prevent these boys from interfering with the lamps and to keep them burning, and any violence which he used towards the boys was a wrongful act upon his part, for which the defendant is not responsible."

It seems to me that in the above quotation there is epitomized the law applicable to this case, and I therefore hold that the plaintiff has no cause of action against the defendant for the act of the laborer herein, which was outside of the scope of his employment and for which he alone is responsible.

Motion denied. Order signed.

---

(89 Misc. Rep. 482)

SHELDON v. OTSEGO & H. R. CO.

(Otsego County Court. March 29, 1915.)

1. STREET RAILROADS ⊕➡87—OPERATION OF CARS—DUTY OF MOTORMAN.
A motorman, on seeing that horses in the street are frightened, must act as a reasonably prudent man, and have his car under such control that he can readily stop it, if necessary, and he cannot wait until the horses are beyond control.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 181, 182; Dec. Dig. ⊕➡87.]

2. STREET RAILROADS ⊕➡90—OPERATION OF CARS—DUTY OF MOTORMAN.
A motorman otherwise exercising due care need *not* stop his car immediately on seeing an animal or 'vehicle on the street near the track, but on giving proper warning may, until the contrary appears, assume that the animal or vehicle will be turned out in time to avoid a collision; but the

⊕➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

right to rely on the assumption does not relieve him from the duty of taking precautions which under the circumstances ordinary care requires of him to prevent a collision, and where he sees, or by the exercise of ordinary care could see, that a collision is likely to occur, he must use reasonable means within his power to stop his car to prevent it.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 190–193; Dec. Dig. ☜90.]

3. STREET RAILROADS ☜99—USE OF STREETS—CARE REQUIRED.

One in charge of horses on a street on which cars run must handle the horses in a reasonable manner.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 209–216; Dec. Dig. ☜99.]

4. NEGLIGENCE ☜136—QUESTION FOR COURT OR JURY.

Where there is a fair chance for difference of opinion among intelligent men on the question of negligence, the issue is for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ☜136.]

5. STREET RAILROADS ☜117—COLLISIONS—NEGLIGENCE—QUESTION FOR JURY.

Whether a motorman, running his car into a horse on the street, was guilty of negligence, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. ☜117.]

6. STREET RAILROADS ☜117—COLLISIONS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether one in charge of horses on a street exercised ordinary care to prevent injury to them in a collision with a street car held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. ☜117.]

7. APPEAL AND ERROR ☜1003—REVIEW—WEIGHT OF EVIDENCE.

The mere fact that a finding of the City Court of a city is sustained by the testimony of one witness, and contradicted by the testimony of two witnesses, does not call for a reversal by the County Court on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. ☜1003.]

Appeal from City Court of Oneonta.

Action by Hiram W. Sheldon against the Otsego & Herkimer Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Owen C. Becker, of Oneonta, for appellant.

Gibbs, Holmes, Waterman & Holmes, of Oneonta (C. E. Holmes, of Oneonta, of counsel), for respondent.

A. L. KELLOGG, J. The plaintiff herein has recovered judgment in the City Court of Oneonta for $146.15 damages and costs by reason of the alleged negligence of the defendant.

It is contended by the plaintiff that on the 7th day of October, 1913, one of his employés was riding one horse and leading two other horses along Chestnut street in the city of Oneonta, and at the same time a car of the defendant, propelled by electricity, was being operated along and over said street, and when at a point a short distance westerly of West street the defendant so carelessly and negligently managed and operated said car that in consequence thereof it collided with and

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ran into one of defendant's said horses, whereby it was severely injured and rendered practically worthless. The defendant admits that plaintiff's horse collided with one of its cars, but denies that it was the result of any negligence on its part, and avers that it was entirely due to the carelessness of plaintiff's servant who was in charge of the horses.

The trial was before the learned city judge without a jury who found in favor of the plaintiff, and rendered judgment pursuant thereto. It appears from the record that at the time and place in question one Robert Maxim, an employé of the plaintiff, of the age of 17 years, was riding one of defendant's horses and leading two others, and had arrived at about the watering trough on Chestnut street when one of defendant's electric freight cars came around the angle in Chestnut street near West street, and was then distant from the horses about 1,100 feet. This witness testified:

"Just below the watering trough the car came around the curve, and I put my hand up to stop it. The horse was afraid, commenced to jump, and it turned me around. One horse whirled right around on the track, right-hand side; saw this car coming around the bend, and the horse commenced to rear; threw up my hand. The motorman was looking right at me, and saw the horse was afraid; seen the car get closer to me. The horse wheeled around on the track. The car hit the horse and pulled me off my horse, and I got the other horse around before he could be hit. The car went by maybe 20 or 30 rods before it could be stopped. The car did not slow down and was going fast. When the car was 60 or 50 feet from me, I stopped the horses and started to pull them off the track. When the car was right upon them, one of them, the horse nearest the track, swung its butt right along the track, and the car step or journal hit the horse. The front end just got by as he jumped."

The witness Delos Yager, an employé of plaintiff, who was driving a horse hitched to a sulky just in the rear of the horses being led by Maxim, testified:

"Q. You can't tell what part of the car hit the horse from where you were? A. The front end of the car. Q. The side of the front end, or the fore part? A. The fore part of the car."

The motorman, Mudge, testified that when he first saw these horses the boy was riding one horse and leading two, and he was on the right-hand side of the road, and the horse nearest the track was quite near the track, and—

"I rang the gong and he pulled his horse over near the curb, so I had room to pass. I slowed up the car and was coasting by. There was no power on, and as I got the front end of the car near the horse he looked this way, and threw his body around on the side of the car apparently. As I approached the horses I reduced the speed, and when I reached them was going 5 or 6 miles an hour. The track was wet and slippery."

Defendant's conductor, Beach, testified:

"We were coasting until we apparently got even with them, when the horse next to the track swung around to the car. This was next to the track; must have been about four feet away before it started to swing around. When I first saw the horses, they were on the right-hand side of the track, probably two feet from the track, and as near the track as he got until he swung around."

The primary question for consideration here is: Under all the circumstances, was the negligence of the defendant and the contributory

negligence of the plaintiff a question of fact for the decision of the city judge?  Or should he have granted a nonsuit at the close of the evidence?  The appellant has urged that it is not in dispute that the injury was resultant from the horse backing or throwing itself around against the car after the forward end of the car had passed it, and that, this being so, it was not possible for the motorman to anticipate that one of the horses would suddenly whirl itself around against the side of the car whilst it was passing, and that therefore the only question for decision here is one of law upon an agreed state of facts, which must be decided in defendant's favor upon the ground that plaintiff has failed to show that it was in any manner guilty of negligence.

The evidence of plaintiff's witness Yager, it must be confessed, is a trifle obscure; but he has, however, testified that the front end of the car hit the horse, not the side of the front end, but the fore part of the car.  Therefore, not only the precise manner in which the accident happened, but the care with which the car was handled and its speed, is in conflict.  Maxim's testimony that the horses were on the track when the car was 60 feet away, and that the conductor did not slow down from the time he waved his hand until the car was 20 or 30 rods past him, and that it was going fast, is flatly contradicted by defendant's motorman and conductor, each of whom have testified that the speed of the car was slackened, that there was no power on, was coasting, and went a short distance before it stopped.

[1] It was the duty of the motorman in charge of defendant's car, upon observing that the horses were frightened, to exercise reasonable care, that is, to act as a reasonably prudent man would under the same circumstances, and therefore, if his car was advancing at a high rate of speed, to slacken the speed, or, if being run at only a moderate rate, to have it under such control that he could readily stop it if the latter act appeared to be necessary from the subsequent acts of the horse.  This duty was not only incumbent upon him to have avoided injury to the horses, or any one of them, in case they became unmanageable, but he had more of a duty to perform than to wait until the horses were beyond control, for then any action on his part would avail little.  He was required to act at that point of time in the occurrences when a reasonably prudent man might infer that the horses would become unmanageable and would act.  Lines v. Winnipeg Elec. St. R. Co., 11 Manitoba Rep. 77; Terre Haute Elec. St. R. Co. v. Yant, 21 Ind. App. 486, 51 N. E. 732, 69 Am. St. Rep. 376; Cit. St. R. Co. v. Lowe, 12 Ind. App. 47, 39 N. E. 165, cited with approval in Danville R. & Elec. Co. v. Hudnett, 101 Va. 361, 43 S. E. 606.

A motorman, seeing that a horse is frightened by the car and becoming unmanageable, who does not slacken his speed or lessen the speed of the car, is guilty of negligence.  Lines v. Winnipeg Elec. St. R. Co., 11 Manitoba Rep. 77.  Negligence has also been predicated where there was a failure to lessen the speed or stop the car when it might have been seen with reasonable diligence that horses were frightened.  Geipel v. Steinway R. Co., 14 App. Div. 551, 43 N. Y. Supp. 934; Ritcher v. Cicero & P. St. R. R. Co., 70 Ill. App. 196;

Danville R. & E. Co. v. Hudnett, 101 Va. 361, 43 S. E. 606; Gibbons v. Wilkes-Barre & S. St. Co., 155 Pa. 249, 26 Atl. 417; note to 4 Am. Elec. Cas. 546; Swain v. Fourteenth St. R. Co., 93 Cal. 179, 28 Pac. 829.

[2] The motorman or driver of a street car, if otherwise exercising due care, is not ordinarily required to stop his car immediately upon seeing an animal or vehicle on the street or highway near the track; but if he gives a proper warning of the approach of his car, he has a right to a limited extent, at least until the contrary appears, to act on the assumption that the animal or vehicle will, if on the track, be turned out in time to avoid a collision, or, if on the part of the street or highway not occupied by the tracks, will remain there until the car has passed, as that it will not attempt to cross the track in front of the car, and if the animal or vehicle is turned onto the track so suddenly that it is impossible by the exercise of reasonable care to stop the car in time to prevent an accident, the company is not liable for resulting injuries; but the right to rely upon such assumption, however, does not relieve the motorman from the duty of taking precautions, which, under the circumstances, reasonable and ordinary care requires of him to take to prevent a collision, and if he sees, or by the exercise of ordinary care could see, that a collision is likely to occur, it is his duty to use reasonable means within his power to check or stop his car in time to prevent it.   36 Cyc. 1510, 1511, and cases cited.

[3] It was likewise incumbent upon the plaintiff to handle the horses in a reasonably prudent manner; that is, as has sometimes been said, with the care of the average man under like conditions and circumstances, as well as to put them in charge of a person of reasonable prudence and skill.

[4] The rule as to when a case must be submitted on the facts, and is not one of law for the court, is clearly defined by Werner, J., in Smith v. N. Y. C. R. Co., 177 N. Y. 229, 69 N. E. 429, wherein he says:

"When intelligent and reasonable men may fairly differ in their answers as to the questions in the case, it is for the arbitration of the jury, and not for the court."

Where there is a fair chance for a difference in opinion among intelligent men, and the facts must go to the jury, and whenever men of ordinary prudence or discretion might differ as to the character of an act under the circumstances of the case, the question whether it was negligence is one of fact. Holbrook v. U. & S. R. Co., 12 N. Y. 236, 64 Am. Dec. 502; Keller v. N. Y. C. R. Co., 2 Abb. Dec. 483; Hayes v. Miller, 70 N. Y. 112.

[5] I am of the opinon, therefore, that the question as to whether the motorman, under the conditions and circumstances as set forth in the record, exercised reasonable care and acted as a reasonably prudent man would have done, as well as the manner in which Maxim handled the horses at the time and place in question, was one of fact for the decision of the city judge.

[6, 7] It is likewise urged that this judgment should be reversed as against the weight of evidence. The mere fact that the young man,

Maxim, and the conductor and motorman of the defendant, are in direct conflict as to their testimony, does not call for reversal of the judgment on this ground; neither has this court any power to so do. The learned city judge presided at the trial, saw each of the witnesses, and heard their testimony, and he evidently accepted the plaintiff's version of the affair, and this court has no right to interfere with such decision.

The judgment appealed from is therefore affirmed, with costs.
Judgment accordingly.