## MARSHALL TRACTION CO. v. YOUNG.
### (No. 1441.)†

(Court of Civil Appeals of Texas. Texarkana. April 6, 1915. Rehearing Denied April 15, 1915.)

STREET RAILROADS ☞114 — COLLISION WITH HORSE—NEGLIGENCE—EVIDENCE.

Evidence in an action for injury of plaintiff by collision of a street car with the horse which he was riding *held* to warrant the conclusion that without fault of plaintiff, his horse being uncontrollable, the motorman negligently caused the injury by not stopping the car after seeing the situation, whether the horse was struck by the side or end of the car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–250; Dec. Dig. ☞ 114.]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by N. C. Young against the Marshall Traction Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was by appellee against appellant for damages for injury to his person, caused by negligence on the part of employés of appellant operating one of its street cars on East Austin street in the city of Marshall. Appellee in the nighttime was riding horseback, going west on said street, and the street car was west of him, moving east. His account of the accident, testifying as a witness, was as follows:

"My horse was in a fox trot as the car came in on the other block about 100 yards, or 75 or 80 yards. They were coming pretty fast and making a good deal of noise, lighted all over. The horse stopped all at once; threw up his head; stiffened himself all over. The car kept coming, and I spurred the horse to move him up; but he didn't move, but ran backward. I tightened my reins to try to get away from where I was. I was about a third of the way coming into that block, and was right on the street car track in the middle of the street. The horse stopped, and I could not do anything with him. I tightened the reins, and the car kept on coming. I had to do something pretty quick, as it did not look like they were going to stop the car. There is an opening there between Mr. Toone's and Mr. Davis' residences, where they drive in and out between the two yards, 15 or 20 feet west of where I was, and my first thought was to make that place, and go in there, and get out of the way of the car. I could not do it, as I had to go 15 or 20 feet to get to that place, and I couldn't turn round or go forward, and couldn't do anything. I held my lines the best I could as the car came closer, and as the car came closer the horse went down where he was, either struck or fell down; but in the scramble the car was in on top of me and the horse both. * * * The only thing the horse would do was to run backward and forward and keep his head toward the car. * * * There was a headlight on the car, and the track seemed to be in bad shape, which caused the light to bounce up and down. The car didn't hold up, nor stop. When it ran against me and the horse, it kept on going. It was going about as fast as I ever saw a car go anywhere on the street. I would say it was going 20 miles an hour, but that would be merely guesswork, as I don't know how fast they run. * * * I think my horse at one time got over north of the street car track. He then got back on the south side of the street car track, and was on the south side when he fell against the car, or the car hit him. * * * He reared and wheeled and pitched as the car kept coming. * * * Don't know whether the car tripped him, or he fell himself. Don't know whether the front of the car hit him or not. I don't know whether he fell against the side of the car or not. My foot hit the running board on the side of the car, but don't know what hit the horse."

Haynes, the motorman operating the car, testified as follows:

"The first I noticed Mr. Young, I was 15 or 20 feet from him. * * * His horse was to the right of the track on the north side of the track, and became frightened and ran backward—I suppose back to the curb on the north side, far enough for the street car, in passing, not to hit him. I thought that the horse would be frightened, but that the street car would get by; but the horse lunged and crossed right in front of the car on the track. What frightened me was the horse trying to cross. The horse went to the curb on the south side of the track after he crossed. At the same time the rider was holding the horse's head towards the car, and the horse was trying to get away from it. By that time, while the horse was at the curb on the south side of the track, my car passed by him at least two-thirds of the way. Then the horse began to run back. I could have speeded up and got away, but I didn't. I was

---

† Writ of error pending in Supreme Court.

afraid the car would run into the horse. * * * The front end of the car did not hit the horse. * * * The car was coasting down hill to the east. I was running about 5 miles an hour. At that rate of speed, I could stop at a very short distance. It would require 4 or 5 feet to stop, and I could stop in that distance. I pulled down on the car, slacking its speed, but didn't stop it still. I was going about 5 miles an hour, and pulled down the speed to about one-half that speed. The car was going about 2½ miles an hour when it hit him. As soon as I saw the horse was clear of the car I increased its speed. I didn't think the car hit him. The way I saw it, the car didn't hit the horse. I thought he was hurt by reason of his horse falling on him. When the horse fell, he was 2 or 3 feet south of the car. I didn't feel the street car hit the horse, though I was looking for it."

The appeal is from a judgment in favor of appellee for $1,800.

John W. Scott and F. H. Prendergast, both of Marshall, for appellant. Beard & Davidson, of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). We do not agree with appellant that the verdict was without support in the testimony. On the contrary, we think (and find) it warranted the conclusion reached by the jury that appellee, without fault on his part, was injured as the result of negligence on the part of the motorman, as charged. The jury had a right to believe that appellee told the truth when he testified that his horse was uncontrollable, and therefore that he was not to blame because he did not get the horse away from the car as it approached. They had a right to conclude, from the testimony set out in the statement above, that the motorman saw the horse, and discovered that he was not manageable, when the car was at least 15 or 20 feet from him, and that the motorman could have stopped the car before it got nearer than 10 or 15 feet to the horse. They had a right to further conclude that, if the motorman had stopped the car as soon as he could after he discovered that the horse was not manageable, injury to appellee would have been avoided, and that a reasonably prudent person operating the car under the circumstances would have so stopped the car, as it was the motorman's duty, when he saw that the horse was frightened and uncontrollable to do what he reasonably could in the management of the car to avoid injury to appellee, the jury, from facts they had a right to find as stated, were warranted in concluding that the motorman had not discharged that duty, and therefore was guilty of negligence. 2 Joyce on Electric Law, § 577; 2 Thomp. on Neg. §§ 1420, 1421; 3 Elliott on Railroads, § 1096; Railway Co. v. Hair, 32 S. W. 1050; Ellis v. Railway Co., 160 Mass. 341, 35 N. E. 1127; Railway Co. v. Page, 10 Kan. App. 362, 59 Pac. 690; Railway Co. v. Hodnett, 101 Va. 361, 43 S. E. 606; Railway Co. v. Lowe, 12 Ind. App. 47, 39 N. E. 165; Traction Co. v. Mullins, 111 Tenn. 329, 76 S. W. 890; Parkinson v. Railway Co., 71 N. H. 28, 51 Atl. 268; McVean v. Railway Co., 138 Mich. 263, 101 N. W. 527; Dabbs v. Railway Co., 8 Ga. App. 350, 69 S. E. 38; Railway Co. v. Thomas, 164 Ala. 191, 51 South. 418; Cameron v. Railway Co., 70 N. J. Law, 633, 57 Atl. 417; Railway Co. v. Cleveland (Ky.) 100 S. W. 283, 11 L. R. A. (N. S.) 853; Railway Co. v. Wall, 142 Ky. 86, 133 S. W. 1145. It was immaterial, we think, whether the horse was struck by the front end or by the side of the car. He would not have been struck at all, but for the negligence of the motorman.

It is insisted that the verdict was excessive, but we do not think we should say it is.

There is no error in the judgment, and it is affirmed.