FORRESTAL, Administratrix, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*October 20—November 17, 1903.*

*Street railways: Killing of child at street crossing: Negligence of motorman: Court and jury.*

1. It is the duty of the motorman of an electric car, as it approaches a street crossing, to observe children near the track in such an attitude as to suggest the probability of their placing themselves in the way of the car, and to use all reasonable care to avoid injuring them.

2. Plaintiff's intestate, a little girl about seven years old, after waiting south of defendant's street railway tracks for a car to pass going east on the southern track, attempted to cross the tracks and was struck and killed by a west-bound car on the northern track. The evidence tended to show that, had the motorman of the west-bound car performed his duty to observe the appearances at the crossing as he approached it, he would have seen the little girl before his view of her was cut off by the east-bound car, and that her movements, situation, and attitude would reasonably have suggested that she was unconscious of the near approach of the west-bound car and that she purposed crossing the tracks as soon as the east-bound car had passed her. *Held,* that it was a question for the jury whether the motorman was negligent in making no preparation to avoid running over the child when she should come upon the northern track from behind the east-bound car.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Action to recover damages alleged to have been caused to the heirs at law of Genevieve Forrestal, deceased, by the act of defendant in negligently causing her death. The claim set forth in the complaint is that the Forrestal girl, an infant of the age of six years and eleven months, while lawfully upon the crossing of Sixteenth and State streets in the city of Milwaukee, a public thoroughfare therein, engaged in crossing State street, was, through negligence of the motorman in charge of one of defendant's cars operated on such street, struck by the car and fatally injured. The alleged negligence of the motorman is failure to give the deceased proper warning of the approach of his car, running it at an unlawful rate of speed, failure to keep it under proper control, failure to see the child in time to avoid injuring her, and failure to properly use the fender device on the car when it was apparent that the car could not be stopped before reaching the child. In addition to the foregoing the complaint contained proper allegations as to formal matters and all conditions precedent to the maintenance of the action.

The answer put in issue the allegations of negligence, and those as to the damages suffered by the heirs at law of the deceased.

The evidence produced upon the trial was to the following effect: State street in the city of Milwaukee is about sixty-four feet wide. It runs east and west and is crossed by Sixteenth street, which is about sixty feet wide. Upon State street, at the time of the accident, defendant operated an electric street car system, using two parallel tracks, the north one being for cars going west and the south one for cars going east. At the intersection of the two streets the child was struck and fatally injured by a car going west, at about 9 o'clock in the evening of May 21, 1902. The crossing and said streets were artificially lighted, so that the motorman

on the west-bound car from two to three hundred feet east of the crossing could have seen a child of the character of the one injured approaching his track from the south side of State street and on the west side of the crossing. Such opportunity for observation continued as the car approached Sixteenth street and up to the point where the child was struck, except as hereafter stated. The car track at the time of the accident was wet and slippery. The circumstances of the injury were as follows: As one of defendant's cars going east upon the south track at a speed of about ten miles per hour was approaching Sixteenth street, and the one that did the mischief was approaching such street from the opposite direction on the north track at about the same rate of speed, the situation of the cars being such as to plainly indicate that they would pass each other on the crossing, the deceased, accompanied by her brother, a child of about five years of age, approached the south track on the west side of the crossing. They were walking hand in hand, and somewhat faster than a walk, going on a hop and skip, as one of the witnesses testified. Between the curb on the south side of the street and the south track, and a safe distance therefrom, they stopped, apparently seeing the car approaching from the west, and waiting for it to pass. At that time they could have been seen by the motorman on the west-bound car. About as the car passed them it intercepted the line of vision of the motorman on the west-bound car. As soon as the east-bound car passed the children they proceeded toward the north track hand in hand as before, hopping and skipping in a childish manner. They emerged from behind the east-bound car and stepped almost immediately upon the track in front of the west-bound car, so that it was impossible for the motorman thereon to prevent the accident. He did not see the girl and could not have seen her from the time his line of vision was interfered with as aforesaid till she appeared so near the track that he could not, at the speed his car was going, stop it

before reaching the point where the injury occurred. As the car approached the crossing the motorman shut off the current and took up the slack of his brake, and also sounded the gong on his car, following the rules prescribed by the company in such situations. As soon as he observed the child on the track he reversed the current and set his brakes, but was so near the girl that the motion of the car was not materially slackened before striking her. There was evidence tending to show that under ordinary conditions such a car could be stopped in going about sixty feet. There was no evidence as to the speed a car should be going under the circumstances of the accident in order that the motorman might stop it in case of a child suddenly appearing upon the track in front of it, in time to prevent injuring the child.

At the close of the evidence the trial court, on motion, directed a verdict in favor of the defendant, holding that the evidence was insufficient to show want of ordinary care upon the part of the motorman who had charge of the car. Judgment was rendered accordingly.

For the appellant there was a brief by *Hoyt & Olwell*, attorneys, and *Hoyt, Doe, Umbreit & Olwell*, of counsel, and oral argument by *L. A. Olwell*.

For the respondent there was a brief by *Spooner & Rosecrantz*, and oral argument by *Clarke M. Rosecrantz*.

MARSHALL, J. The legal principles applicable to the foregoing statement are too familiar to warrant taking time or space to state them. It goes without saying that it is the duty of a motorman in charge of an electric street car to keep a careful lookout ahead upon and in the vicinity of his track so far as the performance of his other duties will reasonably permit, to the end that he may avoid injuring any person that may accidentally or otherwise place himself in a dangerous situation in the pathway of such car; that the degree of diligence in that regard, in order to come up to the

standard of ordinary care which the law requires, varies with time, place, amount, and character of travel upon the street, opportunity for the motorman to see persons using the street for ordinary travel as they approach the track and for such persons to see the approaching car, and all circumstances naturally calculated to increase the hazard of injuring such persons. The care thus indicated, in law, charges the motorman with the duty to use ordinary care to avoid dangerous consequences from causes within his knowledge, and from those which he might, by the exercise of proper vigilance, have knowledge of as well. He is bound not only to keep the careful lookout indicated, but to observe persons approaching the track, or so circumstanced as to suggest a reasonable probability of such approach unconscious of danger, whom, consistent with proper attention to his general duties, he might observe, and to handle his car, so far as ordinary care will permit under all the circumstances, so as not to injure them. Obviously, those principles require a motorman at a street crossing to exercise greater care than between crossings, and much more care in case of very young children approaching the track unconscious of an approaching car, or being so circumstanced as to suggest a probability of such approach, than in case of adults. The citation of decided cases in respect thereto, as regards the case before us, would not be of any great benefit. None can be found, we venture to say, characterized by all the material elements present in this case. For that reason we shall content ourselves with a brief reference to principles, omitting entirely the citation of cases. That class of cases where, in each, a child playing near the track at some point other than at a street crossing suddenly ran in front of a car; and that where, in each; a child standing by the track at a safe distance therefrom looking at an approaching car, and notwithstanding his attitude did not suggest a purpose to go upon the track, he suddenly did that, and so near the car that the exercise of ordinary care on the

part of the motorman after opportunity existed to see the child in a situation of danger did not enable such motorman to avoid injuring the child; and the class in each of which the child, at some point between crossings, suddenly emerged from behind another car or a team, or some object, interfering with the motorman's seeing him until the dangerous situation was created; and that where in each the motorman observed a child at a crossing approaching the track, watching the car and apparently intending to avoid getting in its way, but who suddenly ran in front of it; and others that might be mentioned, where it was held that the motorman was free from actionable negligence, neither rule nor throw any light upon the controversy in this case. To refer to and discuss them would be more liable to confuse than to solve the question raised by the appeal.

There can be no doubt that it was the duty of the motorman, as his car approached the crossing, to observe children near the track in such an attitude as to suggest a probability of their placing themselves in the way of the car, and to use all reasonable care to avoid injuring them in the event of that probability changing to a certainty. It is no excuse for him, as we have seen, that he did not see the little girl as she was waiting for the east-bound car to pass. The evidence tends to show that he had a good opportunity to see her so circumstanced, apparently unconscious of the approach of his car, when he was not more than about 100 feet from the east side of the street crossing, and 160 feet from her, and when it was his duty to take a view of the crossing, so far as he reasonably could, and to see whatever was observable by the exercise of ordinary attention to his duties, calling, or which might probably call, for action on his part in respect to controlling the movements of his car. If a jury should find, as they might properly from the evidence, that had the motorman performed his duty to observe the appearances at the crossing as he approached it, he would have seen the little

girl in the attitude of waiting for the east-bound car to pass
her, apparently unconscious of the approach of the west-
bound car, and suggesting the probability of her attempting
to cross the street as soon as the east-bound car passed her, and
when she could not see the west-bound car nor the motorman
see her till too close upon her to avoid running her down un-
less during the time she was obscured from his view by the
east-bound car he prepared to avoid such danger, could they
reasonably find therefrom the further fact that it was a
breach of the motorman's duty as regards the safety of the
child to operate his car regardless thereof? Assuming, as we
must, that a jury might properly find the primary facts men-
tioned, was the trial court warranted in holding as a matter
of law that the motorman was not guilty of any actionable
fault? It seems that an affirmative answer is clearly due to
the first proposition and a negative answer to the second, and
that the trial court was clearly wrong in taking the case from
the jury. Evidently such court did not give due significance
to the fact that the motorman ought to have seen the little
girl as she was in the attitude of waiting for the east-bound
car to pass her before his line of vision was cut off by said
car; nor due significance to the fact that her movements, situ-
ation, and attitude reasonably suggested a probability of un-
consciousness of the near approach of the west-bound car,
and that she purposed proceeding across the tracks as soon as
the east-bound car passed her. The circumstance present in
many cases where the motorman was held free from fault,
of a child, suddenly and without any reasonable ground to ex-
pect it on the part of the motorman, emerging from obscurity
and rushing into danger, did not exist here. Here, while
the child suddenly emerged from behind the east-bound car
and ran immediately in front of the car that injured her, a
jury would be warranted in saying, as we have indicated, that
the motorman had good ground to expect that very event.
If he had such ground, his failure to make any provision to

avoid the dangerous consequences which might otherwise be likely to occur might well be found by a jury to be inconsistent with the exercise of ordinary care upon which the law would pronounce judgment of actionable negligence.

The judgment must be reversed and the cause remanded for a new trial.

*By the Court.*—So ordered.