## McDERMOTT v. SEVERE.*

---

ELECTRIC RAILWAYS; NEGLIGENT CONSTRUCTION; NEGLIGENCE; EXCEPTIONS; EVIDENCE; INSTRUCTIONS TO THE JURY; MEASURE OF DAMAGES.

1. Evidence of the general custom of other railways in the matter of construction, maintenance, and operation is not always admissible, and even when admissible upon the question of negligence, it is neither conclusive nor of especially great weight.   (Following *Weaver* v. *Baltimore & O. R. Co.* 3 App. D. C. 436.)

2. In an action against a suburban electric railway company to recover for personal injuries to an infant seven years of age, who, while playing with his brothers on a board crossing, caught his foot between one of the rails and the boards of the crossing, the space between which was slightly over 2 inches in width, and was struck by an approaching car, and his foot was so mangled that it had to be amputated, where there is testimony that at other similar crossings of the defendant, and even at similar crossings of other railways, the space between the rails and the boards is less than at the crossing in question; that the space was left for the flanges of defendant's car wheels, which are not more than ¾ of an inch wide at the surface of the rail and narrow sharply for the very short distance to their rims; and that, although no similar accident has ever occurred before on any of the defendant's crossings, the foot of the plaintiff's younger brother had been caught in the same opening a few moments before the accident, and the court has instructed the jury that it was for them to determine whether there was obvious danger in a crossing constructed as the one in question,—it is not error for the trial court to refuse an instruction asked by the de-

---

*\*Street Railroads—Defect in Track or Street.*—For the authorities determining the liability of a street railway company for defects in track or street, see editorial note to *Groves* v. *Louisville R. Co.* 52 L. R. A. 448.

fendant, to the effect that if the jury shall find that the crossing was constructed in the usual way of constructing such crossings in the District of Columbia and elsewhere, and that such construction has been in use in that and other places for some years prior to the accident, and that no accident had occurred prior to that time in the District of Columbia or elsewhere, to the knowledge of the defendant, and that a reasonably prudent man would not have anticipated such an accident from such construction, then their verdict should be for the defendant.

3. In an action against an electric railway company for damages for personal injuries resulting from the negligent construction of one of its crossings, it was *held* that testimony that no similar accident had ever before occurred within the knowledge of the defendant, even if admissible at all (which the court refused to decide), was of no weight in determining the question of negligent construction.

4. In an action against a suburban electric railway company for damages to a seven-year-old boy who, while playing with his two brothers on a board crossing of the defendant, caught his foot in the space between one of the rails and the boards, and while so held was struck by an approaching car, the motorman of which saw the boy on the crossing, while 300 or 400 feet away, but did not apply his brakes until he was about 35 or 40 feet away, when he saw that the plaintiff's foot was caught,—it is proper to submit to the determination of the jury whether the motorman was not guilty of negligence in failing to get his car under control in time to avoid running over the plaintiff, after he actually saw that his foot had been caught; and to refuse an instruction asked by the defendant, that the motorman was not required to commence to stop his car until such time as he discovered that the plaintiff had his foot caught, and that if they found that, as soon as he made such discovery, he did all in his power to stop the car before it struck the plaintiff, they should find for the defendant.

5. Where an objectionable element is contained in a charge to the jury that is correct in general, and is not stated as an independent proposition, a general exception to the entire charge is not sufficient. (Following *Ryan* v. *Washington & G. R. Co.* 8 App. D. C. 542, and *De Forest* v. *United States*, 11 App. D. C. 458.)

6. Where the trial court, in a personal injury case, in an instruction upon the subject of the measure of damages, states that the jury should consider, among other things, the mental suffering, past and future, of the plaintiff, which they might find to be the natural result of his injuries, and the defendant's exception to the instruction is general, and it does not appear from the instruction that the court contemplated future mental anguish as an independent element of the plaintiff's damages, this court will not consider an assignment of error by the defendant,

that the jury should not have been permitted to consider future mental suffering in enhancement of damages.

7. In an action by an infant seven years old for damages for personal injuries, the court may consider future pecuniary loss to the plaintiff by reason of his injuries, such as the loss of a leg. In such an action testimony, expert or otherwise, is not admissible as to the probable earnings of the infant after attaining an age when he might reasonably be expected to undertake regular occupation, as it would be too conjectural. The consequential uncertainty of the computation of such damages, the ascertainment of which must be left to the common experience of the jury, should be borne by the wrongdoer rather than by his victim.

No. 1464.   Submitted February 16, 1905.   Decided April 4, 1905.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury in an action by an infant to recover damages for personal injuries.                                        *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment in an action for personal injuries.

Plaintiff, Charles Erickson Severe, then a child of seven years, lived with his father, William B. Severe, near the line of the double track electric railway, between Riverdale and Washington, operated by defendant as receiver of the City & Suburban Railway Company.

Plaintiff's father and mother had gone on a short visit to Cape May, and were expected to reach home by way of the electric railway from Washington, on Sunday, August 31, 1902, about 2 o'clock in the afternoon. Erickson Severe, the plaintiff, had two brothers, Edward and Raymond, of the age of nine and five years respectively. About 1 : 30 o'clock the three boys went to the customary stopping place of the cars, when passengers desired to get on or off, which was indicated by signs upon poles erected near the tracks.

There was no street or public highway crossed by the railway at the point, but, under agreement with the donor of the

right of way, the defendant had constructed and maintained a board crossing on both tracks, which in the evidence was spoken of as a platform. Persons often crossed on foot to reach the fields and waters on the other side. The evidence tended to show that the boys went there to meet their parents upon their expected arrival.

The eldest boy, Edward, testified that they stayed about an hour together waiting near the track, sitting for a time near a small power house situated near the railway. That he left his brothers standing on the platform and went to the house for a drink of water, intending to return and wait for his parents. On his return Raymond met him at the gate, saying Erickson's foot was caught at the track. That he ran down and saw his brother had his foot caught between the rail and the boards of the crossing; saw a car coming down the track at the same time from 50 to 60 feet away. That he was on the boards and waved his hat and called to the motorman to stop. That the car did not stop until after it struck his brother.

Plaintiff corroborated his brother's evidence in regard to their coming to the tracks, and his brother's return to the house for water. He said that, after Edward left, Raymond's foot got caught between the rail and board. That he did not notice what Raymond had been doing just before this. That he went to Raymond and loosed his foot, and just as he was going back his own foot caught as he was crossing over. Witness could not pull his foot out, and Raymond went to tell Edward. Raymond and Edward met at the gate and came running back. His back was to the car when he heard it coming. He turned his head and saw it coming. He waved his hand. Edward was waving his hat up and down, and calling to the motorman. Raymond was behind Edward, and waving also. The car was close on him when he saw it first. He saw the motorman when he tried to stop, but he was struck and dragged 2 or 3 yards. His left foot was the one caught. Other evidence showed that the plaintiff's leg was badly mangled; that he was carried in the car to Washington, and that his leg was amputated at the hospital.

A passenger on the car testified that the car stopped with a sudden jolt, and that at the time two little boys were on the bank jumping up and down and hallooing. Another passenger testified for defendant, that his attention was attracted by the repeated ringing of the bell, and looking out he saw a boy on one of the tracks waving his hand. Did not see the plaintiff. The next thing that occurred was a jolt as the car was brought to a stop. The motorman was putting on the brakes as hard as he could. Could not tell how far the car went from the first time that he saw the boy mentioned.

The motorman, testifying for defendant, said that he saw the boy on the track about 300 or 400 feet away. That three boys were on the track, running and jumping backwards and forwards across the tracks. That about 150 feet away he sounded his gong. That two of the boys got back on the bank and one stayed on the track. That he rang the gong repeatedly. That he was about 35 or 40 feet away when he saw that the boy was not going to get off the track. That he applied the brakes with all his power and reversed the power, stopping the car as quickly as he could. That when he stopped and got off he found the boy about the center of the car. That he had often seen the same boy and others standing on the track, and that as the car got almost to him he would jump off, clap his hands, and laugh. That he did not see either of the two boys on the bank wave their hands. Plaintiff did not wave to him, and had his face towards him when he struck. That he saw his foot was hung when he was about 30 or 35 feet from him. That the car was between 36 and 38 feet in length, and was running about 8 or 9 miles per hour. Another motorman testified that he had frequently observed boys, plaintiff among them, playing on the crossing and jumping off the tracks ahead of the cars. A witness living near by testified to the same effect. There was testimony tending to show that the boards of the crossing fitted closely to the outside rail. On the inside there was a space of from 2 5/8 inches to 2 11/16 inches between the edge of the board and the tip of the rail, in which the flange of the wheel ran. The rail was the ordinary T rail. The board was square-

edged, and under the top of the rail the space widened. The shoe which the plaintiff wore at the time was produced, and the heel showed that it had been caught in this space.

Defendant introduced several witnesses, among them the contractor who laid the crossing and others familiar with such construction, whose evidence tended to show that it was customary upon railways generally to leave a space of from $2\frac{1}{8}$ to $2\frac{1}{2}$ inches for the entry and play of the flange of the wheel on the inside of each rail. One of these, a general contractor for such work, said that on steam railways the width is usually from $2\frac{1}{4}$ to $2\frac{1}{2}$ inches, because the wheels have a little more tread; that the space is left because if a stone should get in the space the flange would press it down, preventing derailment; that the stone ballast will work out and leave the space deeper, and that work has to be kept up in repair, and sometimes the board must be taken up to fill the low place. If not attended to the road will work out of surface. That in all the crossings on defendant's road the spaces were made from 2 inches to $2\frac{1}{8}$ inches in width. Another of these, having testified that the usual space left on railways was from 2 to $2\frac{1}{2}$ inches, said that the flange of the rail level was $\frac{3}{4}$ of an inch thick and tapered to practically nothing. He further said that in the city streets a special guard and grooved rail is laid.

Plaintiff, in rebuttal, offered evidence tending to show that at two other crossings on defendant's line the space left between the board and the rail was much narrower than the one in question, there being just width enough for the wheel flange, and no more. Also that there was no filling of earth or gravel between the board and rail at the time, and that the board was 2 inches thick, and that subsequently the defendant had filled it in, but the filling would wash out from time to time.

The plaintiff and his elder brother denied that they had been in the habit of playing on the tracks and jumping off, as claimed by defendant's witnesses. The younger boy, Raymond, was offered as a witness, but the court pronounced him incompetent after examining him for the purpose.

The jury returned a verdict for the plaintiff for $15,000.

The court also required them to return answers to the following special issues:

"1. Was the defendant guilty of negligence in the improper construction or maintenance of the crossing?

"2. Was the defendant guilty of negligence in the improper management of the car?

"3. Did the motorman do all in his power to stop the car as soon as he saw the plaintiff's foot was caught in the space between the rail and plank?" They answered "Yes" to the first two of these, and disagreed as to the third. "Thereupon," as recited in the record, "counsel for the plaintiff consent that the jury may answer said third interrogative in the affirmative, but said jury was discharged from further considering said interrogatory."

*Mr. C. C. Cole, Mr. J. J. Darlington,* and *Mr. B. W. Parker* for the appellant.

*Mr. A. S. Worthington* and *Mr. Wm. Meyer Lewin* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It is conceded, by reason of the special findings of the jury, that the defendant was guilty of negligence, not only in the construction and maintenance of the crossing, but also in the management and control of the car; that error in the instructions upon both points must be shown in order to obtain a reversal of the judgment, because either finding alone is sufficient support therefor. On the first of these issues the court charged the jury as follows:

"The construction there is said to be faulty. Of course in determining the question whether or not it is faulty, you must consider all the testimony in the case, the construction that has been used, and the reason that is given for making the construction in the way it was made; and yet if you find that it

was obviously dangerous, notwithstanding that testimony, this company should not be held free from blame for adopting it. That is one question upon which you should exercise your judgment, that is, upon the question whether or not there was obvious danger in a construction like this,—in the width of the hole, in the depth of the hole, in view of the place where it was located, and the fact that children did go on this place, which was known to the officers and employees of the defendant,—and whether or not they were in the habit of crossing at that point and playing upon that track. It is for you to determine whether or not, under all of these circumstances, it was a dangerous situation, and should have been observed by the defendant."

The court also gave the following extract from the instruction asked by the defendant and refused as a whole: "And the jury should determine the question whether the construction was negligent in the light of the facts prior to the accident, and not afterwards. And the question upon that point is not whether such an accident was possible, but whether it was reasonably to be anticipated."

The defendant asked the following special instruction, which was refused: "If the jury shall find, from the evidence, that the crossing or platform at the place where the accident happened was constructed in the usual and ordinary way of constructing such crossings in the District of Columbia and elsewhere, and that such construction had been in use in that and other places for some years prior to this accident, and that no accident of the kind in question had occurred prior to that time in the District of Columbia or elsewhere to the knowledge of the defendant's officers or agents, and that a reasonably prudent man would not have anticipated such an accident from such construction, then the verdict should be for the defendant. And the jury should determine the question whether the construction in question was negligent in the light of the facts prior to the accident, and not afterwards. And the question upon that point is not whether such an accident was possible, but whether it was reasonably to be anticipated."

The instructions given left the question of negligent con-

struction and maintenance fairly to the jury upon all of the evidence relating thereto, and there was no error in refusing defendant's special instruction based entirely upon the evidence relating to the general custom of railways in respect of the space usually provided between the inner edge of the rail and the edge of the crossing board. Evidence of the general custom of other railways in the matter of construction, maintenance and operation is not always admissible even, and though probably proper, in this case, for the consideration of the jury in the determination of the question of negligence submitted to it, it is neither conclusive nor of specially great weight. *Wabash R. Co.* v. *McDaniels,* 107 U. S. 454, 461, 27 L. ed. 605, 608, 2 Sup. Ct. Rep. 932; *Texas & P. R. Co.* v. *Behymer,* 189 U. S. 468, 470, 47 L. ed. 905, 906, 23 Sup. Ct. Rep. 622; *Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454, 469, 23 L. ed. 356, 362; *Weaver* v. *Baltimore & O. R. Co.* 3 App. D. C. 436, 448, and cases cited. See also *Spooner* v. *Delaware, L. & W. R. Co.* 115 N. Y. 22, 21 N. E. 696; *Cleveland, C. C. & St. L. R. Co.* v. *Walter,* 147 Ill. 60, 64, 35 N. E. 529; *Lake Erie & W. R. Co.* v. *Mugg,* 132 Ind. 168, 174, 31 N. E. 564; *Hamilton* v. *Des Moines Valley R. Co.* 36 Iowa, 33, 37; *Koons* v. *St. Louis & I. M. R. Co.* 65 Mo. 592; *Helfenstein* v. *Medart,* 136 Mo. 595, 617, 36 S. W. 863, 37 S. W. 829, 38 S. W. 294; *Mayhew* v. *Sullivan Min. Co.* 76 Me. 100, 111; *Champaign* v. *Patterson,* 50 Ill. 61, 65.

The question as here presented is quite different from that in *Washington Asphalt Block & Tile Co.* v. *Mackey,* 15 App. D. C. 410, 425, upon which the appellant relies. There, in an action for injury to an employee, the evidence showed that the appliance was one commonly in use, and considered safe; that it was not out of repair; and that the injury was due to careless handling by a fellow servant; and it was held that it was not error to refuse an instruction permitting the jury to find that the defendant had been negligent because of its failure to substitute for a reasonably safe appliance in general use another, and, in the opinion of the jury, a superior one.

Under an assignment of error on the refusal of the court to

direct a verdict for the defendant, the contention of the appellant, on the argument, has been that the evidence of the general custom of construction of like crossings is conclusive proof of the exercise of reasonable care, but the refused instruction does not go that length.

As before said, the evidence in this regard was clearly not conclusive; nor was it of an exceptional character and weight that required the court to give it emphasis in charging the jury. It is to be remembered also that the customary space left to receive the flanges of the car wheels was proved to have been something less, even upon steam railways, than that at the place of the accident; that there was evidence tending to show that the flanges were not more than ¾ of an inch wide at the surface of the rail, and narrowed sharply for the very short distance to their rims; that there was evidence tending to show considerably less space for the purpose at other of defendant's crossings; and that though no similar accident had been known to have occurred before on any of the defendant's crossings, the foot of the plaintiff's younger brother had been caught in the same opening a few minutes before. Moreover, that no similar accident had ever before occurred within the knowledge of the defendant—a fact upon which stress is laid in the refused instructions—is of no weight in determining the question of negligent construction. Many well-considered cases hold that such evidence is not even admissible. *Hodges* v. *Bearse,* 129 Ill. 87, 89, 21 N. E. 613; *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71, 75, 42 N. E. 501; *Bloor* v. *Delafield,* 69 Wis. 273, 277, 34 N. W. 115; *Temperance Hall Asso.* v. *Giles,* 33 N. J. L. 260, 263. The question of admissibility, however, it is not necessary here to decide. It may be added, also, that in one of the cases above cited the injury was caused by a like construction, and the question of negligence was held one proper for the determination of the jury. *Spooner* v. *Delaware, L. & W. R. Co.* 115 N. Y. 22, 33, 21 N. E. 696.

On the second point the defendant requested the following special instruction, which was refused: "If the jury shall find from the evidence that the motorman sounded his gong when

he was far enough away from the plaintiff and his associates,. so that they had sufficient time to leave the track before the car reached them, he had the right to assume that they would do· so, and he was not required to commence to stop the car until such time as he discovered that the plaintiff had his foot caught. between the rail and plank; and if they shall further find that, as soon as the motorman made such discovery, he did all in his power to stop the car ·before it struck the plaintiff, then they should find for the defendant."

Several other instructions of like purport were asked and re-- fused, but as they comprehend the first point also, and contain the matter relating to the construction of the crossing that has. been passed upon, they will be omitted.

The court thereupon charged the jury as follows: "On the· other question, as to whether the motorman did all that he could possibly do under the circumstances to avert this danger, you will have to consider all of the testimony, not only that of the· plaintiff, but of the defendant, and try to reconcile it so far as. you can in order to ascertain where the fact lies. Was it pru- dent in that motorman, under all the circumstances of the case,. to calculate that these children would be off from that track and out of danger when he got there? Or was it requisite for him, as a prudent and reasonable man, to have his car under· control, so that he could stop very suddenly in case they were not. out of danger when he got there? Of course, in determining that question you are to consider what had been the habit of' children about playing at that place. You are not to attribute any contributory negligence to the plaintiff, because this plaintiff is less than .seven years of age, and the law does, not give him discretion. Adults have to look out for child-- ren of that kind. But at the same time he may have been in the habit of jumping off and on that track in such a way that· the motorman might have been justified in concluding there· would be no danger. You are to look at all the surrounding: facts, and see whether that is true,—whether he was justified in that calculation. There was one boy still smaller than the· boy who was injured, and, according to the motorman's own.

statement, the three boys were running back and forth across the track. It is for you to determine whether or not he should have gotten into close proximity to them without getting his car under such control that he could have stopped very suddenly if necessary to prevent an accident. Of course, after he saw that the boy's foot was caught, he must do everything to stop the car. But I call your attention to the time before he could see that the boy's foot was caught, and ask you to consider what it would have been prudent for him to do before that time, considering all the surrounding circumstances, considering the formation of this plank crossing, of this track, and of this platform, and considering the fact, as the motorman says it was a fact, that children were frequently there running back and forth. Should he have anticipated that there might have been some kind of danger there, and should he have stopped his car or gotten it under control before he even saw any signal or waving, or before he saw that the boy's foot was caught. Of course, after he saw that the boy's foot was caught, it must be his duty to stop just as soon as he can in order to prevent the accident. I have no doubt he did that. But whether he discharged his whole duty towards these children, whom he admits having seen there before that time, is a question for the jury."

We are of the opinion that there was no error either in giving the one instruction or refusing the other. Under all of the facts and circumstances of the case it was proper to submit to the determination of the jury the question whether the motorman, who had ample time to do so after he first saw the children on or near the track, was not guilty of negligence in failing to get his car under such control that he could have stopped it in time to avoid running over the plaintiff after he actually saw that his foot had been caught between the board and the rail. *Baltimore City Pass. R. Co.* v. *Cooney,* 87 Md. 266, 268, 39 Atl. 859; *Welsh* v. *Jackson County Horse R. Co.* 81 Mo. 466; *Livingston* v. *Wabash R. Co.* 170 Mo. 452, 471, 71 S. W. 136; *Holden* v. *Missouri R. Co.* 177 Mo. 456, 76 S. W. 973; *Danville R. & Electric Co.* v. *Hodnett,* 101 Va. 361, 43 S. E. 606;

*Strutzel* v. *St. Paul City R. Co.* 47 Minn. 543, 545, 50 N. W. 690; *Gray* v. *St. Paul City R. Co.* 87 Minn. 280, 284, 91 N. W. 1106; *Forrestal* v. *Milwaukee Electric R. & Light Co.* 119 Wis. 495, 500, 97 N. W. 182; *Louisville & N. R. Co.* v. *Vanarsdell*, 25 Ky. L. Rep. 1432, 77 S. W. 1103; *Wallace* v. *Suburban R. Co.* 26 Or. 174, 25 L. R. A. 663, 37 Pac. 477; and see *Spooner* v. *Delaware, L. & W. R. Co.* 115 N. Y. 22, 33, 21 N. E. 696; *O'Connor* v. *Boston & L. R. Corp.* 135 Mass. 352, 356, 361.

The last question for consideration arises on an exception taken to the charge of the court instructing the jury in respect of the measure of damages, as follows:

"The jury are instructed that if they find a verdict for the plaintiff they should render a verdict in his favor for such a sum (not exceeding the amount claimed in the declaration) as in their judgment will reasonably compensate him for the pain resulting from the injury and from the loss of his leg; for the inconvenience to which he has been put and which he will be likely to be put during the remainder of his life in consequence of the loss of his leg; for the mental suffering, past and future, which the jury may find to be the natural and necessary consequence of the loss of his leg; and for such pecuniary loss as the direct result of the injury, which the jury may find, from the evidence, that he is reasonably likely to sustain hereafter in consequence of his being deprived of one of his legs.

"You must exercise your own best judgment in regard to that. Of course you are limited by the declaration, and cannot exceed the amount claimed, $25,000. Of course that is not a suggestion to you that you should take that as a criterion to go by. That is only a limit, above which you cannot go. It is not a suggestion that you should go to that amount. The question is simply: What is the proper compensation to this boy for this injury, in case you find a verdict in his favor? What is proper compensation considering all the circumstances,—the wound, the suffering, his probable length of life, the handicap he will sustain by reason of this wound during the remainder of his life? Make an estimate as best you can on that subject."

Defendant asked no special instruction on this point, and

pointed out no specific objection to the charge given, but ex-cepted thereto in general terms. The following special objections have been urged on the argument: (1) That the jury were told that if they found for the plaintiff their verdict should not exceed the amount claimed in the declaration; (2) that there was no evidence from which the jury could compute the pe-cuniary damage of the plaintiff due to the deprivation of the use of his leg throughout life; (3) that damages for this de-privation until plaintiff shall attain the age of twenty-one years accrue to his father, and not to him; (4) that future mental suffering is not an element of damage.

As said before, the exception to the charge was general, and not specific. And recurring to the assignment of errors, we find but two of the objections now contended for pointed out therein. These are: "(1) The jury should not have been permitted to consider future mental suffering in enhancement of damages; (2) the jury should not have been permitted to consider future pecuniary loss to the plaintiff by being deprived of the use of his leg."

Under these limitations in the assignment of error, the first and third objections before stated pass out of consideration. However, they are of no practical importance under the circum-stances. The expression in the first part of the charge relating to mental suffering in the future was part of an instruction that was good in general, and the language is substantially similar to that of a charge on the measure of damages that has been held good by the Supreme Court of the United States under a general exception. *Washington & G. R. Co.* v. *Harmon* (*Washington & G. R. Co.* v. *Tobriner*) 147 U. S. 571, 573, 584, 37 L. ed. 284, 286, 290, 13 Sup. Ct. Rep. 557; see also *District of Co-lumbia* v. *Moulton,* 15 App. D. C. 363, 367, 379. Whether future mental anguish forms an element of damages for the con-sideration of the jury, save under peculiar conditions which may or may not be found in the case before us, is a question that we need not consider in the absence of a special instruction or specific exception directing the attention of the trial court thereto. The rule is well settled that where an objectionable

element is contained in a charge that is correct in general, and is not stated as an independent proposition, a general exception to the entire charge is not sufficient. *Texas & P. R. Co.* v. *Humble,* 181 U. S. 57, 67, 45 L. ed. 747, 752, 21 Sup. Ct. Rep. 526; *Texas & P. R. Co.* v. *Cody,* 166 U. S. 606, 616, 41 L. ed. 1132, 1136, 17 Sup. Ct. Rep. 703; *Baltimore & P. R. Co.* v. *Mackey,* 157 U. S. 72, 91, 92, 39 L. ed. 624, 631, 15 Sup. Ct. Rep. 491, and cases cited; *DeForest* v. *United States,* 11 App. D. C. 458, 464; *Ryan* v. *Washington & G. R. Co.* 8 App. D. C. 542, 543. This rule of practice is directly applicable to the conditions here presented. The charge given was apparently adopted from that approved in *Washington & G. R. Co.* v. *Harmon* (*Washington & G. R. Co.* v. *Tobriner*) 147 U. S. 571, 37 L. ed. 284, 13 Sup. Ct. Rep. 557, and it does not appear from the language used that the court contemplated future mental anguish as an independent element of plaintiff's damages. Had special attention been called to this language before submission to the jury, the ambiguity might have been corrected.

Assuming that the second point raised in the error as assigned may be available under the general exception, we are of the opinion that it is not well taken. Damages of the kind are clearly recoverable in the case of an adult. In such a case it is within the power of the plaintiff to introduce evidence of the ordinary earning capacity of the party at the time, but still there remains a large element of uncertainty which must be left to the sound discretion of the jury. In the case of an infant of the age of the plaintiff there can be no like evidence, but it is nevertheless clear that a similar damage must occur. *Rosenkranz* v. *Lindell R. Co.* 108 Mo. 9, 17, 32 Am. St. Rep. 588, 18 S. W. 890; *Schmitz* v. *St. Louis, I. M. & S. R. Co.* 119 Mo. 256, 277, 23 L. R. A. 250, 24 S. W. 472; *Texas & P. R. Co.* v. *O'Donnell,* 58 Tex. 27, 44. Evidence relating to the probable earnings of the infant plaintiff after attaining an age when he might reasonably be expected to undertake regular occupation or employment would necessarily consist of conjecture on the part of the witness. There is no ground for the introduction of evidence in the nature of expert testimony, and the ascer-

tainment must be left to the common experience of the jury, charged with the responsibility of returning a fair verdict under all the circumstances,—a verdict that is at the same time subject to the approval or disapproval of the trial court. Any other rule would deny to all infants the recovery of any damages whatever on account of the diminution of future earning capacity which must necessarily result from the loss of a limb, and would work not only hardship, but injustice also. The consequential uncertainty of the computation of such damages, as is the case in that permitted for pain and suffering, should be borne by the wrongdoer, rather than by the victim of his wrongdoing.

Finding no reversible error in the proceedings on the trial, the judgment will be affirmed with costs. It is so ordered.

*Affirmed.*

A writ of error to the Supreme Court of the United States was allowed April 7, 1905.