# BARSTOW v. CAPITAL TRACTION COMPANY.*

TRIAL; DIRECTION OF VERDICT; STREET RAILWAYS; NEGLIGENCE AND CON-
TRIBUTORY NEGLIGENCE; INFANTS.

1. It is only where all reasonable men can draw but one inference from
the undisputed facts, that the question to be determined is one of law
for the court, and not of fact for the jury. (Following *Jennings* v.
*Philadelphia, B. & W. R. Co. ante,* 219.)

2. Where, in an action by a nine-year-old boy against a street railway
company, the testimony for the plaintiff tended to show that, respond-
ing to a call of the motorman of defendant's electric car, which was
ascending a steep grade at a rapid speed, and which had overtaken
the plaintiff and his five-year-old sister as they were walking in the
roadway adjoining the tracks, the plaintiff ran towards the car,—the
motorman continuing to look at and talk to him,—and, as he reached
a point about opposite the center of the car, fell, and his foot next
the car was caught under the rear wheel and crushed; and where it
also appeared that after deliberating over night the jury, to whom the
case had been submitted, failed to agree, and the trial court thereupon
directed a verdict for the defendant,—it was *held* that the action of
the court was erroneous, as the case was one for the jury.

3. The law requires a very high degree of care on the part of a street rail-
way company in the operation of its road, occupying, as it does, the
streets and avenues with its tracks and cars to its own profit, under a
franchise granted primarily in the interests of the public.

4. A much higher degree of care on the part of a street railway company
in the operation of its cars is required towards a child, who, owing to
his immature years, is incapable of realizing and appreciating the
proximity of danger and the necessity of care and caution to avoid in-

*Street Railroads—Children.—The duty of street railroad companies to
avoid injury to children, and the sufficiency of the evidence to go to the
jury in such cases, is discussed and the authorities presented in editorial
note to *Wallace* v. *City & Suburban R. Co.* 25 L.R.A. 663.

jury, than is required towards grown men and women, whose knowledge, experience, and mature years better enable them to look out for themselves.

5. The question of whether a child of tender years has exercised such care as would reasonably be expected from a person of his age and capacity is a question for the jury, to be determined by the circumstances of the particular case. (Following *Baltimore & P. R. Co.* v. *Webster*, 6 App. D. C. 182, and *Baltimore & P. R. Co.* v. *Cumberland*, 12 App. D. C. 598, 176 U. S. 232, 44 L. ed. 447, 20 Sup. Ct. Rep. 380.

No. 1683. Submitted March 11, 1907. Decided April 2, 1907.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action to recover damages for personal injuries.            *Reversed.*

The COURT in the opinion stated the facts as follows:

This action was brought in the supreme court of the District by the appellant, Paul D. Barstow, an infant, through his father, Francis D. Barstow, as his next friend. The court below directed a verdict for the defendant, the Capital Traction Company, and this appeal resulted.

The sole question involved is whether the court erred in holding that there was not sufficient evidence to warrant a submission of the case to the jury.

The plaintiff gave evidence tending to show that on the afternoon of December 15, 1900, when he was nine years old, he and his little sister, four years younger, were overtaken by a freight car of the defendant company at a point on Connecticut avenue extended about midway between Albemarle street and Chevy Chase circle, as they were returning home; that the car tracks occupy the center of the avenue, a roadway being left on either side; that plaintiff and his sister were in the roadway east of the tracks, that is, on the *right-hand side of the tracks;* that, just as the forward end of the car got opposite, the motorman called plaintiff by name, and said something which plaintiff did not understand; that plaintiff's sister asked, "What did

he say to you?" that plaintiff said he didn't know, but would try to find out; that he thereupon started towards the car, which had been and was ascending the grade at a speed about equal to the speed of a boy "when he was running his hardest;" that the motorman was "still looking right at him" and facing him and leaning over the side of the car; that his body was hidden from plaintiff, but his head and shoulders were visible; that he continued to talk to plaintiff as plaintiff ran towards him, and continued to look at plaintiff, and plaintiff continued to look at him; that just as plaintiff got about opposite the center of the car he slipped or stumbled and fell, and his left foot, *the foot next the car,* "shot out under the rear wheel," and was, of course, run over and crushed so badly that amputation ensued. Plaintiff further testified: "It is not a fact that on this occasion I ran up to the car and hung on a part of it. I did not touch any part of it at all. I did not have hold of any part of it at all, I am positive of this."

The sister, a child ten years of age at the time of the trial, testified that, as the freight car overtook her brother and herself on the occasion of the accident, the motorman spoke to her brother, and that she asked what he said, and her brother replied that he did not know, but would try to find out; that as her brother started towards the car her attention was again taken up with the cows in the field adjoining; and that her attention was next arrested by her brother's outcry, whereupon "she hollered too, and ran home." The little girl was asked, "Where was the freight car, this car you speak of, when you asked Paul what the motorman said? Where was it; was it behind you or in front of you? A. Why, the motorman was just about even with us. Q. And where was the motorman looking? A. Looking at Paul—looking at us."

Both Paul and his sister were cross-examined at some length, but their testimony was not materially affected by the cross-examination.

After some further testimony as to the extent of the plaintiff's injury the plaintiff rested; whereupon the defendant produced Charles E. Yeager, who testified that on the day of the

accident he was employed as a motorman by the defendant company on the Chevy Chase division, and that he was in charge of the freight car which injured the plaintiff; that as he was going up Armes Hill, this side of Chevy Chase circle, he saw the plaintiff and his little sister walking up the road in the same direction as the car was going; that after he had passed them he felt the car run over something, and heard the little girl scream, and immediately stopped the car; that *when he looked around the boy was balancing himself on one foot;* that he *then* jumped off the car and ran to the boy's assistance; that the track where the accident occurred is "a long stretch of straight track;" that the car was running as "fast as it could be driven by the motor," probably "not over 5 or 6 miles an hour,—something like that;" that he knew Paul and his sister by sight, *but did not know their names;* and that he did not *"call"* to the boy or to the girl.    He subsequently, in his direct examination, stated: "I may have bowed to them, because the boy was always very friendly, and whenever the boys would go by he would wave at them.    When I say 'the boys' I mean the men connected with the road. * * * I may have bowed to him as the car passed.    I did not see him run for the car or come towards the car.    When I last saw him he and his sister were still walking along up the road, as I said, as near the center of the road as I can judge, the last I saw of them, until I stopped the car and went back and found him hurt."    Witness further said he was standing in the center of the front platform of the car; "that the controller is on the left-hand side and the brake-staff is on the right-hand side, and I was standing in a position to have my hands on both, if I don't mistake.    I have no recollection of having faced about to the side as I passed them.    In fact, I feel almost safe in saying that I did not.    *I may have turned my head, but as far as turning the body is concerned, I did not.    I may have turned my head and looked.*    * * *    The first time I looked around the corner was after I heard the girl scream.    *I looked back and I saw the boy had gotten up."*    Thereupon counsel for defendant recited to the witness the substance of plaintiff's testimony to the effect that the witness had spoken to the plaintiff, and the

witness was asked whether these statements were true, and re-
plied: "No, sir, I did not talk to him; I did not call him."
The witness was then asked: "Q. Did you call him by name?
Did you call his name? A. *Well, when I spoke to him I may
have said, 'Good Evening, Paul,' or said, 'Hello, Paul,' or some-
thing of the kind;* but as far as calling to him, or continuing to
talk to him, or looking around the edge of the car and contin-
uing to tal.. to him, I most assuredly did not; because the boy,
whenever the cars would pass, every one there on the road, all
the boys knew him, and all the men who worked there would
speak to him whenever they saw him, and I reckon it is more
than likely, when he and his sister were walking up the street,
if he had looked at me and said anything, that I might have
said, 'Hello, Paul,' or something of that kind. But as far as
leaning around the car and continuing to talk to him, and he
running alongside of the car, he is mistaken."

The defendant introduced some testimony to the effect that
the plaintiff had on previous occasions attempted to get on a
moving car. Witnesses were also introduced who testified that
on the occasion of the accident plaintiff was apparently trying
to get hold of the car. Their opportunity for observation, how-
ever, was not of the best, as their somewhat conflicting and in-
consistent statements disclosed; but, quite apart from that, under
the view we take of the case, we do not deem it necessary to ad-
vert further to their testimony. Neither do we deem it neces-
sary to refer to the other testimony in the record except to state
that it appears therefrom that the car in question was a *closed*
*box car.*

The court first submitted the case to the jury, and in his
charge said:

"There is no possible theory upon which the boy can recover
from the defendant unless you find that after he was in a situa-
tion of danger the motorman not only knew he was in a situa-
tion which would be likely to produce injury to him, but you
must further find that, knowing that, the motorman could have
stopped the car in time to have avoided the injury; not only
that he could have stopped the car, but that a man of ordinary

prudence and caution under those circumstances would have undertaken to stop the car; because it is a question of fact for you to say, and not a question of law for the court to determine, whether or not there was anything in that situation that maintained at that time that justified the motorman in believing that the boy would not come close enough to be injured, or whether there was anything in the situation which would have called upon the motorman to recognize that the boy was not proposing to stop and would probably meet with injury unless the motion of the car was arrested. And it is in that regard only that it becomes of any consequence for you to consider the fact, if you find it so to be so, that the motorman was talking with the boy; because if the motorman and the boy were engaged in conversation, that may have been an *indicia* to the motorman whether or not the boy was going to keep along in a situation of danger or was going to stop before he approached a position of peril.

"Now, I repeat that, and leave it,—that is, I repeat, the only theory upon which it is possible to say that this railroad company violated any duty to this boy; and that is on the single theory that this boy approached so close to the car that he was in a situation of peril and danger; and, thirdly, that an ordinarily prudent person, had he been motorman, would, under those circumstances, have endeavored to stop the car, and would have succeeded in stopping the car and thus avoided the injury. And unless you find that condition to have transpired, it is your duty, under your oaths, to bring in a verdict for the defendant."

The following instruction was also given at the request of defendant' counsel:

"If the jury shall find from all the evidence that the plaintiff, Paul Barstow, on the occasion in question, was injured by attempting to catch hold of or to hang on to the side of a freight car of the defendant while the said car was in motion, without the knowledge of any of the defendant's servants who were then upon the said car, the jury are instructed, as matter of law that the said plaintiff cannot recover, and their verdict should be for the defendant."

The jury retired and at 10 o'clock A. M., the next day, not

having reached an agreement, was sent for by the court, when the following occurred:

The Court: Mr. Foreman, I understand that the jury is not able to agree?

The Foreman: That is true.

The Court: Do you think that the jury would agree if they were required to deliberate longer? Do you think there is any hope of it?

The Foreman: I do not think there is.

The Court: Is that the sentiment of the jury as a body? Do you think it is not worth while to deliberate further?

The Jurors: Yes, sir.

The Court: Gentlemen, the court was very desirous that the jury might determine this question of fact, if they were able to do so; but inasmuch as you are not able to agree, and all indicate your judgment to be so, I think it is not worth while to require that you deliberate further. But in view of the nature of the evidence, and in view of the legal propositions which were submitted to you yesterday by the court in the charge, to the effect that there was no theory of this case whereunder the plaintiff could recover save one, and that was that the boy had approached the place of danger with the knowledge of the motorman, and that the motorman, having knowledge that he was in danger, was called upon by the circumstances to stop his car, and failed to do it, the court is of the opinion that there is no evidence sufficient to warrant a finding by the jury that the motorman did know that this boy was in a place of danger; in fact, had no knowledge of his proximity to the car until the accident had happened. Therefore the situation resolves itself into this, whether or not, when the court is called upon to afford the sanction of judicial approval to a verdict rendered in favor of the plaintiff, in case the jury did render that verdict, the court would be required to say, as a matter of law, that there was no evidence to justify such a verdict; and therefore the court now resolves the case into that question of law, instructing you, as a matter of law, that there is no evidence to justify a verdict in favor of the plaintiff,

and that, therefore, you ought under the law to render a verdict in favor of the defendant.

If there was any probability that either party would be able to bring, on another trial, more evidence than they have brought now, I would simply discharge you and permit a retrial; but it is perfectly patent that both sides have produced all the evidence that is susceptible of being produced, and therefore the result of another trial would have to be the same as this, on the same evidence.

The clerk may therefore take the formal verdict for the defendant, on the direction of the court.

*Mr. Frank J. Hogan, Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellant.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

It has many times been ruled that it is the duty of the trial court to direct a verdict when the evidence introduced at the trial, *with all the inferences that the jury may justifiably draw therefrom* is insufficient to support a verdict; but "where the sufficiency of the evidence to establish a necessary fact is fairly a question of doubt, it is the province of the jury to pass upon it, with proper instructions by the court as to the law of the particular case made by the evidence. The jury are the judges of the credibility of the witnesses and the weight of their testimony, and it is only where all reasonable men can draw but one inference from the undisputed facts that the question to be determined is one of law for the court." *Jennings* v. *Philadelphia B. & W. R. Co.* App. D. C., present term, [*ante,* 219]. In the light of this general statement of the rule, let us briefly review the circumstances surrounding the parties at the time of the injury complained of, and the evidence upon which the plaintiff bases his right of recovery. It is undisputed that this boy was

but nine years old at the time of the accident; that he was walking along a public avenue or highway, as he had a legal right to do; that the defendant's tracks occupied the center of that avenue, the roadway being on either side, and, of course, *close to the tracks;* that the defendant's motorman saw both the boy and his sister before he reached them, and that shortly thereafter the car ran over the boy's left foot and crippled him for life. All this is conceded. Paul testified that his attention was first arrested and drawn to the car by the act of the motorman in addressing him by name and saying something else which he did not understand. The motorman denied "calling" him, that is, inviting him to run towards the car, but finally admitted in his direct examination that *"when he (the motorman) spoke to him he may have said 'Good evening, Paul,' or 'Hello, Paul,' or something of the kind."* This strongly corroborates the boy's testimony, and, when we consider the admitted speed of the car and the position of the boy, it becomes apparent that the boy's statement that the motorman saw him as he started to run towards and alongside the car is far from unreasonable, because, had the boy delayed starting, he could not have overtaken the car at all. The boy states positively that the motorman not only saw him when he started towards the car, but that the motorman continued talking to him and looking at him, and that he continued to look at the motorman until he stumbled and fell and was injured. The little girl, who, as the car approached, appears to have been interested in some cows just over the fence, testified without objection that the motorman did speak to Paul, and that she "asked Paul what he said," and that thereupon Paul started towards the car. It will be noted that the motorman finally admitted that he "may have turned his head and looked," and that he did not say he had his hands on either the controller or the brake-staff. It will also be observed that the motorman himself said he saw the injured child *without leaving his car,* as the child stood beside the track "balancing himself on one foot."

If the testimony of these children is true, and it is not for us to say it is not, we think it is for the jury to determine, after

receiving proper instructions from the court, whether a man of ordinary prudence and caution, situated as this motorman was situated, should have known, or should have had reason to know, that a child no older than this boy, running as fast as he could run close to and alongside a car, and over a more or less uneven surface, and with eyes on the motorman, was in a position of imminent danger, and whether, under all the circumstances, ordinary prudence and caution instantly required him to do what he could to warn the child of its danger, and to instantly attempt to arrest the motion of his car.

Whilst the act of the learned judge in taking the case from the jury after having previously submitted it to them in the manner heretofore mentioned was a courageous act, we are forced to conclude that it was not within the province of the court to determine, as matter of law, under the facts disclosed by the record, "that there is no evidence sufficient to warrant a finding by the jury that the motorman did know that this boy was in a place of danger, in fact, had any knowledge of his proximity to the car until the accident had happened." The Supreme Court of the United States has recently said, in *McDermott* v. *Severe,* 202 U. S. 600, 604, 50 L. ed. 1162, 1166, 26 Sup. Ct. Rep. 709, that "negligence only becomes a question of law to be taken from the jury when the facts are such that fairminded men can only draw from them the inference that there was no negligence. If fairminded men, from the facts admitted, or conflicting testimony, may honestly draw different conclusions as to the negligence charged, the question is not one of law, but of fact, and to be settled by the jury under proper instructions. *Richmond & D. R. Co.* v. *Powers,* 149 U. S. 43, 37 L. ed. 642, 13 Sup. Ct. Rep. 748; *Northern P. R. Co.* v. *Everett,* 152 U. S. 107, 38 L. ed. 373, 14 Sup. Ct. Rep. 474." That twelve fairminded men did "honestly draw different conclusions as to the negligence charged" in the present case is obvious from the fact that they failed to agree after having considered the evidence over night and under a charge which, as a whole, was distinctly favorable to the defendant. The jury system is the law of the land, and disputed questions of fact arising out of the manifold

relations of men are not to be determined by the court as matter of law, but are to be submitted to the jury,—the tribunal whose special function it is to pass upon such questions. The wisdom of this system, and the danger encountered in departing from it, are every day apparent. It is a protection to the weak and to the strong alike, and, as long as it maintains, respect for the law will continue, because the verdict of the jury is usually the reflection of public sentiment. Experience has demonstrated that, however learned in the law he may be and however conscientious he may be, a judge, being removed from the practical affairs of life, is less qualified to determine questions of fact than twelve men taken from the every-day walks of life. So we say that, while this case is a close one, depending largely upon the view taken of the evidence, it is nevertheless a proper one for the jury.

The law requires a very high degree of care on the part of this defendant. It is permitted to occupy the streets and avenues of the District with its tracks and cars, to its own profit and advantage. This franchise, granted primarily in the ·interests of the public, carries with it, and should carry with it, corresponding responsibilities, among which is the responsibility of operating its road with due regard to the safety of the entire public. It is manifest that a much higher degree of care is required towards a child, who owing, to his immature years, is incapable of realizing and appreciating the proximity of danger and the necessity of care and caution to avoid injury, than is required towards grown men and women, whose knowledge, experience, and mature years better enable them to look out for themselves.

And this brings us to the contention that, aside from the question of whether the defendant was negligent, the plaintiff cannot recover, because the evidence shows he was *sui juris* and guilty of such contributory negligence as to defeat his right of recovery.

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a

jury; and this, whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them." *Richmond & D. R. Co.* v. *Powers, supra.* This is the rule as to adults, and it applies with greater force to children. Indeed, we had supposed it settled doctrine in this jurisdiction that the question whether a child of tender years has exercised such care as would reasonably be expected from a person of his age and capacity is a question for the jury, and to be determined by the circumstances of the particular case. In view, however, of the above contention of the learned counsel for appellee, which was earnestly and ably pressed in the arguments at bar and exhaustively treated in their brief, we will again review some of the cases which we deem most applicable.

The case of *Lynch* v. *Nurdin,* 1 Q. B. 29, has been many times cited by the Supreme Court of the United States and relied upon by other courts as a leading case upon this subject. In that case the defendant's carman went into a house, and left his horse and cart unattended in the street for a period of half an hour. The plaintiff, a boy about seven years of age, with other children, took advantage of the carman's absence to play about the vehicle. The plaintiff got upon the cart, and as he was in the act of getting off another boy started the horse, causing the plaintiff to fall and the wheel to run over him and break his leg. The court was asked to rule that the plaintiff could not recover because of his own negligence. This request the court refused, and submitted to the jury the question of whether the defendant was guilty of negligence, and, if so, whether the negligence caused the accident. On appeal before the Queen's bench, Lord Denman, in referring to the contention that plaintiff was guilty of contributory negligence, said: "The legal proposition that one who by his own negligence contributed to the injury of which he complains cannot maintain his action against another in respect of it has received some qualifications. Indeed, Lord Ellenborough's doctrine in *Butterfield* v. *Forrester,* 11 East, 60, which has been generally adopted since, would not set up the want of a superior degree of skill or care as a bar to the claim of redress.

Ordinary care must mean that degree of care which may reasonably be expected from a person in the plaintiff's situation; and this would evidently be very small indeed in so young a child. But this case presents more than the want of care; we find in it the positive misconduct of the plaintiff an active instrument towards the effect. * * * But the question remains, Can the plaintiff, consistently with the authorities, maintain his action, having been at least equally in fault? The answer is that, supposing that fact ascertained by the jury, but to this extent, that he merely indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, then we think that the defendant cannot be permitted to avail himself of that fact. The most blamable carelessness of his servant having tempted the child, he ought not to reproach the child with yielding to that temptation. He has been the real and only cause of the mischief. He has been deficient in ordinary care; the child, acting without prudence or thought, has, however, shown these qualities in as great a degree as he could be expected to possess them. His misconduct bears no proportion to that of the defendant which produced it."

In *Washington & G. R. Co.* v. *Gladmon,* 15 Wall. 401, 21 L. ed. 114, the plaintiff, a boy of seven years old, attempted to run across the tracks in front of a moving horse car in the District of Columbia. Before he got across he turned suddenly to run back, and in some unexplained manner was severely injured by the horses or car. There was evidence that the driver of the horse car was talking to a person who was standing beside him, and not looking at his horses or the track ahead. It was contended that the child was guilty of contributory negligence, and therefore could not recover. This contention was not sustained by the trial court, and the jury was permitted to judge the child's conduct according to the measure of his years and discretion. The Supreme Court, in sustaining the trial court, said: "The rule of law in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years, is quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by per-

sons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another. Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge. Of a child of three years of age less caution would be required than of one of seven, and of a child of seven less than of one of twelve or fifteen. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case." The trial court was also requested to charge the jury in that case that, if they found the plaintiff had negligently or rashly attempted to cross the street in front of the car, and that "his injuries resulted from his having accidentally slipped and fallen on or near the track when endeavoring to turn back when it was too late to stop the car, it is to be regarded as an inevitable accident, for the consequences of which the defendant is not responsible." This request was refused, and the Supreme Court disposed of it in these words: "The suggestions already made are applicable to this request. The circumstances that the plaintiff was an infant of tender years, and that a different rule was required in that case from the rule in the case of an adult, was excluded from the proposition. A charge in accordance with the prayer could not, therefore, have been properly made."

Another case in which the rule is clearly announced is that of *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657, 21 L. ed. 745. In that case the plaintiff, a boy six years of age, was seeking to recover damages for an injury received by him while upon the premises of the defendant from mere curiosity or amusement. The plaintiff with other boys went to the company's depot, and then proceeded over the tracks of the defendant to its turntable, about a quarter of a mile distant. They found the turntable unguarded and not fastened or locked. Two of the boys commenced to revolve it on its axis, and the plaintiff's foot, as he was attempting to get upon the turntable, was caught and badly crushed. The court, through Mr. Justice Hunt, said: "It is well settled that the conduct of an infant of tender years is not to be judged by the same rule which governs that of an adult.

While it is the general rule in regard to an adult that, to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case." In discussing the degree of care required of the defendant the court observed that, if the jury might justly infer from the evidence that the defendant in the construction, location, management, or condition of its machine has omitted that care and attention to prevent accidents which prudent and careful men ordinarily bestow, they were at liberty to find for the plaintiff. The court further said: "That the turntable was a dangerous machine, which would be likely to cause injury to children who resorted to it, might fairly be inferred from the injury which actually occurred to the plaintiff. There was the same liability to injury to him, and no greater, that existed with reference to all children. When the jury learned from the evidence that he had suffered a serious injury by his foot being caught between the fixed rail of the roadbed and the turning rail of the table, they were justified in believing that there was a probability of the occurrence of such accidents."

Following the rule announced in the foregoing cases, this court in *Baltimore & P. R. Co.* v. *Webster,* 6 App. D. C. 182, through Mr. Chief Justice Alvey, said: "With respect to the question of contributory negligence of the plaintiff, that was also properly submitted to the jury. As matter of defense, it was incumbent upon the defendant to establish such contributory negligence, unless shown in the proof produced by the plaintiff. The plaintiff, at the time of the injury received, being a boy under twelve years of age, as shown by the proof, could not be expected to exercise the same degree of care and caution to avoid danger to himself as would be exacted of an older or an adult person under like circumstances. The question in all such cases is whether the child has exercised such care as was reasonably to be expected from a person of his age and capacity; and the mere

fact that he was old enough to know the probable consequences of the act which caused his injury will not conclusively determine that he was negligent in a degree to defeat his right to recover, since it is not to be expected that a child will exercise the measure of prudence or caution in avoiding danger that we expect of an adult. *Washington & G. R. Co.* v. *Gladmon, supra; Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657, 660, 21 L. ed. 745, 748; *Plumley* v. *Birge,* 124 Mass. 57, 26 Am. Rep. 645."

In the *Webster Case* the infant plaintiff, it will be seen, was about twelve years of age at the time he received the injury forming the basis of his action. There was evidence that he was accustomed to trains and the tracks at the place where he was injured, and that he was negligent in failing to observe the train which injured him, and also that he had been known to indulge "in stealing rides."

The rule laid down in the *Webster Case* was reiterated in *Baltimore & P. R. Co.* v. *Cumberland,* 12 App. D. C. 598. The plaintiff in that case was more than twelve years old at the time he was injured. The decision of this court was sustained on appeal by the Supreme Court of the United States in 176 U. S. 232, 44 L. ed. 447, 20 Sup. Ct. Rep. 380.

Also see *Illinois C. R. Co.* v. *Jones,* 37 C. C. A. 106, 95 Fed. 370; *Cook* v. *Houston Direct Nav. Co.* 76 Tex. 353, 18 Am. St. Rep. 52, 13 S. W. 475; *Wynn* v. *City & Suburban R. Co.* 91 Ga. 344, 17 S. E. 649; *Consolidated Traction Co.* v. *Scott,* 58 N. J. L. 682, 33 L.R.A. 122, 55 Am. St. Rep. 620, 34 Atl. 1094; *Price* v. *Atchison Water Co.* 58 Kan. 551, 62 Am. St. Rep. 625, 50 Pac. 450; *Costello* v. *Third Ave. R. Co.* 161 N. Y. 317, 55 N. E. 897.

The following, taken from the opinion of the Supreme Court of the United States in *McDermott* v. *Severe,* 202 U. S. 600, 609, 50 L. ed. 1162, 1168, 26 Sup. Ct. Rep. 709, is peculiarly applicable here, for we all know how prone the average nine-year-old boy is to race with anything that moves: "This court in *Union P. R. Co.* v. *McDonald,* 152 U. S. 262, 277, 38 L. ed. 434, 441, 14 Sup. Ct. Rep. 619, quoted approvingly from Judge Cooley in a Michigan case: 'Children, wherever they go, must

be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly.' This view is supported by other well-considered cases. *Powers* v. *Harlow,* 53 Mich. 507, 514, 51 Am. Rep. 154, 19 N. W. 257; *Camden Interstate R. Co.* v. *Broom,* 71 C. C. A. 641, 139 Fed. 595; *Forrestal* v. *Milwaukee Electric R. & Light Co.* 119 Wis. 495, 97 N. W. 182; *Strutzel* v. *St. Paul City R. Co.* 47 Minn. 543, 50 N. W. 690; *Gray* v. *St. Paul City R. Co.* 87 Minn. 280, 91 N. W. 1106."

In view of these authorities, we think it would be error to rule, as matter of law, that the plaintiff under the circumstances of this case was guilty of such contributory negligence as to bar his right of action. Moreover, the argument that he was defeats itself, because the negligence of this child in running alongside the car in the manner he did, as was said in *Lynch* v. *Nurdin,* 1 Q. B. 29, bears no proportion to the negligence of the motorman, if he saw the child and failed either to warn him or to stop the car. An electric car may reasonably be considered a dangerous machine if left standing upon the track, since it requires no special skill or knowledge to start it. Under the authority of the *Turntable Case,* had the car in question been left standing upon the track, and this boy and other boys had come along, and, out of childish curiosity, started it up, and in consequence received injury, they would have had a right of action against the company. Surely, in such a case as this, where the boy, according to his testimony, was not a trespasser, and where the car was in direct charge of the company's servant, and where, under one view of the evidence, the accident might have been prevented had the servant acted with prudence and promptness, it is for a jury to say whether a recovery may be had. It can be of no consequence that the child was running alongside, instead of in front, of the car, if the motorman saw him, and, as a reasonable and prudent man, had reason to believe him to be in peril; and, assuming the child's testimony to be true, the very fact of his injury, as was said by Mr. Justice Hunt in the *Turntable Case,*

would justify the jury in believing that there was a probability of the occurrence of such an accident.

The judgment must therefore be reversed, with costs, and the cause remanded, with directions to grant a new trial, and it is so ordered.                                                   *Reversed.*